Kenneth S. MacAffer, J.
The Board of Water Supply of the City of New York hereinafter referred to as city moves for an order of this court confirming the Sixth Separate Report dated October 10, 1958 of Frederick H. Stang, Harold W. Cole *1029 and Peter J. Donoghue, Commissioners of Appraisal, and which report was duly filed in the office of the Clerk of the County of Sullivan on October 17,1958 except as to the following awards:

Claimant Amount of Award

Allen Nelson and Maude Nelson.....$10,000
Calman Klass and Fannie Klass..... 8,250
Lena Storcheim ................... 2,600
Benjamin Rosenshein .............. 2,500
Isadore Rosenshein ................ 3,500
Irving Frank and Samuel Frank.... 7,500
Jacob Frank ...................... 3,500
Irving Frank and Simon Frank...... 1,000
With respect to the aforesaid enumerated awards the city moves that such awards be rejected.
All of the above-named claimants appeared by their attorneys, Messrs. Krieger and Scheinman, in opposition to the motion of the city to reject their awards.
The claimants, Allen and Maude Nelson, Lena Storcheim, Benjamin Rosenshein and Isadore Rosenshein, made a cross motion to confirm their awards.
The claimants, Klass, Irving and Samuel Frank, Jacob Frank and Irving Frank and Simon Frank, interposed a cross motion for the rejection of the awards to such claimants on the grounds that the same were inadequate. Thereafter, and in the memorandum submitted in behalf of the claimants who had made a cross motion to reject for inadequacy, the statement is made that the cross motion for such purpose has been withdrawn and such claimants move for confirmation of their awards.
The notice of motion is also directed to Robert V. Stapleton as attorney for Winifred Osterhout and Mabel Osterhout. However, no appearance on this motion has been made in behalf of such persons and no relief against such individuals has been asked on this motion.
The issue before the court, therefore, is whether the report of the Commissioners with respect to the awards made and the claimants heretofore listed in the amounts set opposite their names should be rejected or confirmed.

The Nelson Award

The city contends, with respect to the Nelson claim, that the Commissioners erroneously made an award to Nelson as a riparian owner with respect to an individual parcel which was not a part of the property OAvned by Nelson or for which he was entitled to an award. The claimants, Nelson, contend, however, that they were the proper claimants and that their rights were *1030 such that they were entitled to prosecute a claim as riparian claimants for all the lands contained within the several parcels which they contended were used by them as one unit. The city also contends that the award is excessive.
Claimants Nelsons’ Exhibit 7 in evidence is a map showing a portion of the Never sink River and five parcels of land upon which is denoted the deeds by book and page of the four parcels which were conveyed to the Nelsons and the parcel which was conveyed to one Fred Smith.
The first parcel was conveyed to the Nelsons by deed dated the 23rd day of June, 1939 and recorded March 12, 1940 containing approximately one acre; the second parcel by deed dated the 11th day of September, 1942 and recorded September 28, 1942 and containing approximately 1.75 acres; the third parcel by deed dated the 10th day of October, 1945 and recorded July 19, 1946 and containing approximately 1.92 acres; the fourth parcel by deed dated the 10th day of September, 1947 and recorded September 19, 1947 and containing approximately 1 acre; the fifth or Smith parcel was conveyed by Thomas Barkley and Myrtle Barkley, his wife, to Fred Smith by deed dated the 1st day of September, 1951 and recorded September 14, 1951.
Prior to this conveyance to Smith, the Nelsons had been in possession of this fifth parcel under a contract of purchase and sale with the Barkleys, which contract was dated May 15, 1948. Under date of August 31, 1951 Nelson assigned this contract to Smith as part of the transaction whereby the Barkleys conveyed the said parcel to Smith and Smith then contracted to sell the parcel to the Nelsons, by agreement dated September 5, 1951. On September 5,1951 Smith contracted to sell this parcel to the Nelsons together with a sewage disposal plant to be installed by Smith, which plant would serve the properties contained within the first aforesaid four parcels owned by the Nelsons. Possession of this property under the contract was to be continued to the Nelsons. The purpose of this agreement was to secure Smith for the cost of his construction of the sewage disposal plant. Thus, after the conveyance by Barkley to Smith, the claimants Nelson were in possession and use of this riparian parcel by reason of the contract to sell and purchase between Smith and Nelson dated September 5, 1951.
The claimants Nelson had executed three mortgages to Winifred Osterhout and Mabel Osterhout, which mortgages covered the first four aforesaid numbered parcels. An action was instituted to foreclose these mortgages and the property was sold by a Referee in such proceedings on June 5, 1952. On the same day the Referee executed and delivered a deed to the *1031 purchasers, Winifred Osterhout and Mabel Osterhout, his wife. Immediately thereafter the premises foreclosed as aforesaid were leased by the Osterhouts to the Nelsons and the Nelsons remained in possession of the premises. This lease provided for a yearly rental of $2,500 for the first year, second year $3,000 and the third year $3,500, with the privilege to the lessees to purchase the premises for $17,500. The Nelsons have continued in possession but have not exercised the option but they have renewed the option.
It appears that the Nelsons were in possession of these five parcels of real estate and used all of the property as a unit in the conduct of their business, that is, in the rental of bungalows, the conduct of the grill and the entertainment of their guests. These guests used the lower parcel for boating, bathing and fishing in the Never sink River.
The claimants Nelson were in possession of the four aforesaid parcels and the aforesaid riparian parcel from the date of acquisition by deed and contract as aforesaid without interruption until June 5, 1952.
The parties concede that the date of right to diversion of the water of the Never sink River was June 2, 1952 and the date of actual diversion was June 1, 1953.
The award to the claimants Nelson has been made subject to release by the Osterhouts and by Fred Smith of whatever rights these parties might have in the premises and in the said award.
As has been noted above, the claimants Nelson were in possession of the first four parcels on June 2, 1952, the date of acquisition of the right to divert the waters of the Never sink River, as owners of the title thereto. Although the judgment of foreclosure and sale was entered prior to June 2, 1952, the Referee’s deed was not delivered to the Osterhouts until June 5, 1952. Until the delivery of the Referee’s deed the Osterhouts acquired no title to the property nor could the Nelsons be deprived of their right to possession of the property until the actual passing of title under the Referee’s deed. (Central Hanover Bank & Trust Co. v. Boccia, 244 App. Div. 106, 112.)
On June 2,1952 the Nelsons were in possession of the riparian parcel under their contract of purchase from Fred Smith. The Nelsons were therefore equitable owners of the riparian parcel. (Administrative Code of the City of New York, § K41-26.0; Clark v. Long Is. Realty Co., 126 App. Div. 282; Goldman v. Rosenberg, 116 N. Y. 78; Reifer v. Osmers, 252 N. Y. 320.)
In the case of Clark v. Long Is. Realty Co. (supra) the court said at pages 282 and 283: “ It is not necessary to cite authority *1032 for the familiar proposition that the vendee under an executory contract of purchase and sale has the equitable title, the vendor holding the legal title merely as security for the payment of the purchase money. The plaintiff’s theory is that the contract was abrogated by the condemnation proceedings; but no authority is cited in support of that proposition, and no reason is urged or suggests itself to us for so holding. The contract is not abrogated. (Randolph’s Law of Eminent Domain, § 170). The damages awarded in the condemnation proceeding belong to the vendee, subject of course to the lien of the vendor, and if the latter receives them, he does so as trustee for the former. (McIntyre v. Easton & Amboy R. R. Co., 26 N. J. Eq. 425; Pinkerton v. Boston & Albany R. R. Co., 109 Mass. 527; Stevenson v. Loehr, 57 Ill. 509.) ”
The Nelsons were, therefore, entitled to an award as riparian owners. (Administrative Code of City of New York, §§ K41-26.0, K41-13.0.) The Commissioners quite properly made such award subject to the rights, if any, of Fred. Smith and the Osterhouts.
Lastly, the city contends that the award of $10,000 to the Nelsons is excessive. This court has reviewed the testimony offered on the question of damages. The proof offered is sufficient to sustain the determination of the Commissioners of Appraisal. No sufficient grounds are urged or cited by the city which would justify this .court in rejecting the award. It might be added that the evidence of the witnesses for the city as to damages was not realistic. Such testimony was of little value to the Commissioners or to this court in determining the amount of the damages to be awarded the claimants.
The award to the Nelsons should, therefore, be confirmed.

The Lena Storcheim, Benjamin Bosenshein and Isadore Bosenshein Awards

It is conceded by the parties that the claims of the above-named are similar in character and should be considered together.
The city contends that these claims should be rejected because the claimants’ right in the Never sink River was limited and restricted and that the awards, therefore, are excessive. The claimants urge that the awards be confirmed.
These claimants are the owners of properties located some distance from the river but in addition to the ownership of such properties are also the owners of easements over the lands of others permitting them and others to go to the river,
*1033 By deed dated August 3, 1940 George Gorton and Sarah E. Gorton conveyed to Lena Storcheim a parcel of land containing 3.05/100 acres, which deed also conveyed to Lena Storcheim an easement running from the northwesterly corner of her lands in a westerly direction to the Neversink River at a width of 10 feet. The easement further provides that the right of way is to be used exclusively by the said grantee and persons residing on her property and no others. By deed dated October 1, 1945 George Gorton and Sarah E. Gorton, the same grantors as aforesaid, conveyed to Lena Storcheim one quarter of an acre more or less, which lands adjoin the aforesaid parcel. By deed dated October 4, 1945 Pearl B. Depuy Roosa conveyed to Lena Storcheim approximately 1.07/100 acres of land, which parcel adjoins the second parcel acquired by the claimant Storcheim.
Following the acquisition of the first described parcel of property in 1940 the claimant started the construction of a story and a half dwelling. Thereafter the structure was improved and enlarged.
The right of way, the subject of the easement, had a width of 10 feet and ran for a distance of approximately 1,600 feet to the river and was fenced on both sides. From the testimony it is apparent that subsequent to the acquisition of the second and third parcels of land the claimant Storcheim used all of her lands as one parcel. In offering proof of damages the witnesses for both the claimants and the city described the lands, including the easement for access to the river, as one parcel.
By deed dated June 25, 1945 Leon and Belle Rosenshein conveyed to Isadore Rosenshein, the claimant herein, a parcel of land containing two acres and also conveyed to the grantee a 20-foot-wide right of way commencing at a point in a State highway in the vicinity of the property therein conveyed and running to the Neversink River. By deed dated June 25, 1946 Leon and Belle Rosenshein conveyed to Benjamin Rosenshein, the claimant herein, a parcel of land containing two acres and also conveyed to the grantee a 20-foot-wide right of way commencing at a point in a State highway in the vicinity of the property therein conveyed and running to the Neversink River. Both these rights of way were apparently over the same land and were both used by the parties in connection with the renting of apartments to Summer guests. The distance from the properties to the river by the use of this right of way is approximately 2,400 feet.
The city on this motion contends that all of these claimants by virtue of the aforesaid easements had only the right to walk to the river and had no right to the use of the river for swim *1034 ming and fishing. The testimony disclosed that the claimants and others, prior to diversion, used the river for the purposes of swimming and fishing. The testimony also disclosed that the claimants, their guests and tenants, travelled over the lands contained within these easements in going from their abodes to the river and return. There is no testimony that anyone ever questioned the use of these easements including bathing and fishing in the river. There is no testimony that anyone ever sought to stop these uses.
The extent of the use of the easement might be an issue between the parties to an easement, but such use may not be contested by a person not a party to the easement. The intent of the parties to an easement can best be determined by the use which the grantee made of the provisions of the easement with the apparent knowledge and consent of the grantors.
In determining what, if any, rights these claimants, by virtue of their easements, had in the river, cognizance should be taken of section 240 of the Beal Property Law which provides: ‘1 Every instrument creating * * * an estate or interest in real property must be construed according to the intent of the parties, so far as such interest can be gathered from the whole instrument, and is consistent with the rules of law.”
It should be borne in mind that this was a resort area and the Me ver sink Biver with its facilities for bathing and fishing was the prime incentive for people to visit and populate the area. Certainly these grantees would not have been interested in obtaining merely the right to go to the river. Such a restricted use would not have been of any avail to the grantees in the entertainment of their guests. Likewise, it is reasonable to assume that when the grantors conveyed such easements they contemplated the purpose for which the easement must have been obtained. A reasonable interpretation therefore would not restrict the use but would include the right to swim and fish in the river.
The claimants’ easements running to the Never sink Biver, by implication therefrom, include the right to the use of the river. (Erit Realty Corp. v. Sea Gate Assn., 259 N. Y. 466, 470; Tenenbaum v. Sea Gate Assn., 253 App. Div. 166.)
The city also contends that the commission in determining the amount of damages did not take into consideration the distance between the location of the properties and the river, traveling by means of the rights of way. Testimony was offered concerning these distances. Such testimony would bear only on the amounts of the awards and would not have any bearing on the extent of the rights which the grantees of these easements *1035 might enjoy. There is no reason to assume that the commission did not take into consideration such testimony in determining the amounts of the awards.
Referring to the Storcheim claim, the city further contends that these easements did not enure to the benefit of Parcels 2 and 3 conveyed to the claimant as aforesaid. The second parcel was conveyed to her by the same grantors who conveyed the first parcel. The third parcel was conveyed to her by other grantors. The extent, however, to which she might make use of the easement with respect to these lands is dependent upon the construction which the parties to the easement may place upon it. If there should be differences as to the applicability of the rights under the easement to these parcels, such differences would be between the parties to the easement and would be subject to resolution between them. There is no proof in the record that there were any residents on these two parcels prior to the time of diversion.
This court, therefore, concludes that the contentions of the city are not well taken. The weight of authority as heretofore stated gave these claimants the right not only to go to the river but to make use of the river for swimming and fishing.
The city bases its contention that the awards were excessive on the grounds hereinbefore discussed. This court having rejected these contentions of the city, these awards must be confirmed. These claimants were entitled to an award under sections K41-13.0 and K41-26.0 of the Administrative Code of the City of New York.

The Calman and Fannie Klass, Irving and Samuel Frank, Jacob Frank and Irving and Simon Frank Awards

It is conceded that the claims of the above-named claimants are similar in character and should be considered together. The claimants were prior to 1951 owners of nonriparian parcels and these claims are made pursuant to the provisions of section K41-44.0 of the Administrative Code of the City of New York. All of these claimants prior to the diversion of the waters of the Never sink River were engaged in the business of renting living accommodations to summer guests. The volume of business carried on by these claimants varied. The Franks owned four parcels of property, three of which were contiguous and one of which was located approximately 1,800 feet north of the others. The Frank properties were operated as a unit. The Klass property consisting of 2.6 acres with bungalows erected thereon was located somewhat south of these aforesaid properties. All of these properties are located in or near the Hamlet *1036 of Woodbourne in the Town of Fallsburg, Sullivan County. The testimony discloses that all of the claimants and their guests, prior to the diversion, used certain portions of the river for bathing and fishing.
The city in opposing the confirmation of the awards made to these claimants contends that none of these claimants were either riparian owners or vested with any other water rights in the river in connection with the properties when the city acquired the right to divert and therefore they are not entitled to any award. The claimants ask that the awards be confirmed.
The Frank properties are located near a pool in the river which is owned by one Leon Rosenshein and the Klass property is located near a pool in the river known as the Burton pool. There is no proof in the record as to who is the owner of the riverbed where the Burton pool is located. The record further discloses that there has been in the past litigation concerning the ownership of the bed of this pool but that no determination was made as to in whom title vests.
The claimants Frank offered proof as to the use of the Rosenshein pool which they and their guests had made over a period of years. Leon Rosenshein, the owner of this pool, testified that he had permitted the Franks, their guests and all those who so desired, to use the facilities of the river on his property for many years. He further testified that one of the Franks had contributed to the premium which he paid for liability insurance and that these claimants Frank had assisted in the maintenance of this pool and had with his permission used a bulldozer to deepen and dam the pool. He also testified that the Franks had made repairs to the steps leading onto his property. There was further testimony that the Franks had each year kept chairs and other bathing equipment on the bank along the pool. The claimants Frank therefore contend that they were licensees and that they and their guests had the right to use this pool subject only to revocation by Rosenshein.
The record discloses that the Burton pool was located in the Never sink River at or near the southerly boundary of the Rosenshein property and that it was approximately 450 feet long with a width of approximately 150 feet and a maximum depth in excess of 8 feet. It was described as one of the best pools for the purpose of bathing and fishing located in the Neversink River. In order for the Klasses and their guests to reach this pool they were required to walk along Route 42 in a southerly direction for a distance of approximately 150 feet and then through the field for a distance of less than 50 feet to the pool.
*1037 Klass testified that he and his guests had always used the pool since the time when he purchased this property and began to develop his bungalow colony. The record also discloses that this pool was used by all who desired to use it and that no restrictions were ever imposed. The use of this pool was heretofore considered in the case of the claim of Friedman’s Lake-view Hotel (Matter of Huie, 12 Misc 2d 1057) and such use was determined to be sufficient basis for a business damage claim.
It is the contention of the claimants Klass that they by reason of such usage had acquired a license for such use which would continue until revoked by the owner. The city asserts that all of these claimants and their guests were trespassers in the use of the river.
Section K4H4.0 of the Administrative Code of the City of New York provides that an owner of real estate not taken by the city by virtue of other provisions of this article or of the Conservation Law of the State of New York whose property has been directly or indirectly decreased in value by reason of the execution of any plans for such additional water supply by the city shall have the right to damages for such decrease in value from the time of the beginning of such decrease in value. It would appear therefore that the Legislature of this State, in enacting this provision of law, intended that such property owners, even though they might not be riparian owners should have the right to be compensated for any damage by reason of the decrease in value of their lands, if such devaluation occurred by reason of the acts of the City of New York in diverting the waters of this river. (Matter of Board of Water Supply, 211 N. Y. 174, 183.)
The contention of the city that these claimants were trespassers in the use of these waters is without merit. Their use of the waters of the river was not unlawful. They were licensees and as such were entitled to continue the use to which they were making of the waters until such licenses should be revoked. (Matter of Huie [Friedman’s Lake View Hotel], 208 Misc. 82; Matter of Huie [Ella Geiselhart], 2 A D 2d 785; Matter of Huie [Friedman’s Lake View Hotel], 12 Misc 2d 1057.)
The testimony clearly establishes that prior to the diversion these claimants were using these waters in connection with their businesses and were not in any way restrained or restricted in such use. These claimants therefore must reasonably be expected to have continued to use such facilities without interference. No person having any right or title ever interfered or sought to stop such use. Except, therefore, for the acts of the city, the situation, it may be reasonably assumed, would have *1038 remained the same as it had continued over the years. The value of the use was terminated by the action of the city in executing its plans for the diversion of the waters of the river.
This court, therefore, concludes that these claimants qualified as such pursuant to the aforesaid provisions of the Administrative Code of the City of New York and were therefore entitled to be awarded in damages the difference between the value of their properties immediately prior to and after the diversion of the waters of the Never sink River.
The city does not complain that the awards are excessive and its contention with respect th.er.eto is based on the sole ground that the claimants were not proper claimants as aforesaid. This court having determined that they were proper claimants, these awards must be confirmed.
The claimants, Frank and Klass, have in their memorandum submitted to the court requested that they be allowed interest from the date of the report of the Commissioners of Appraisal. This court finds, however, no support for this contention and the same is denied. (Matter of Huie [Dairymen’s Assn.], 7 A D 2d 24.)
The city having moved without objection for the confirmation of the only other award in the report of the commission and this court having affirmed the awards which the city sought to reject, the report of the Commissioners of Appraisal filed in the office of the Clerk of the County of Sullivan on October 17, 1958 is therefore in all respects confirmed.
The attorneys for the city shall submit the order in accordance with this opinion within 10 days upon giving the respondent claimants’ attorneys three days’ notice of such submission.