VINCENZA CESARIO et al., Appellants, *v.* ANGELA CHIAPPARINE et al., Respondents, et al., Defendant.

Second Department, May 25, 1964.

*Bernard Meyerson* and *Solomon Z. Ferziger* for appellants.

*Lillian A. Cuff* and *George J. Conway* for Angela Chiapparine, respondent.

*William C. Mattison* and *Allen M. Taylor* for Emelia Cesario, respondent.

HOPKINS, J. Plaintiffs William Cesario and Vincenza Cesario are husband and wife. On December 7, 1958 the oil burner in their home failed, and they went to stay temporarily at the home of William's mother, the defendant Emelia Cesario, located at 2406 85th Street, Brooklyn. The house next door, 2402 85th Street, was owned by the defendant Angela Chiapparine, having been purchased in 1944 and occupied by her until the date of the accident in which Vincenza was injured.

Between the two houses there was a concrete alleyway approximately 8 feet wide. The defendant Cesario owned 2 feet of the alleyway extending from the side of her house. The defendant Chiapparine owned the remaining 5 feet[1] of the alleyway. At the end of the alleyway there was a garage owned by defendant Cesario.

The deed of purchase of the Chiapparine property contained the following easement in favor of the Cesario property: "Subject to an easement or right of way in favor of the owner of the premises immediately adjoining on the southeast of the most southeasterly five feet of the premises herein described for the use and purpose of ingress and egress for pleasure automobiles to and from a garage built partly on the premises here as [sic] described and partly on the premises on the southeast."

A side entrance from the Cesario house opened to the alleyway. On the Chiapparine house, between the street and the side entrance to the Cesario house, there was a drainpipe which collected water from the roof and discharged it upon the alleyway. About four feet from the end of the pipe, and in the center of the alleyway, was a small sewer which was designed to drain off the surface water.

When William and Vincenza arrived at the Cesario house on December 7, 1958, Vincenza entered by its front or street door without incident. William drove his automobile into the garage at the rear of the alleyway. He came into the Cesario house through the side entrance, and, in Vincenza's presence, complained to his mother (the defendant Cesario) that in the alleyway ice had formed extending from the drainpipe on the Chiapparine house to the Cesario property. His mother replied that she had wanted to put salt on the ice, but that the defendant Chiapparine did not want her to do so because the concrete would be injured.

Later in the day Vincenza left the Cesario house for an automobile ride, using the front entrance for her departure and return. On the morning of December 8, Vincenza left the house and did not return until after 3:00 P.M., again using the front entrance. In the evening, at about 8:30 or 9:00 P.M., she went out of the house by the front entrance, walking to her automobile parked in the street in front of the Chiapparine house and the alleyway. A light snow was falling. She met her brother-in-law who lived in the Cesario house, and returned with him. They

---

1. The testimony at the trial substantiated these dimensions of the alleyway and the ownership of the defendants in the alleyway, though obviously the respective measurements do not tally.

entered the alleyway, Vincenza walking on the side nearest the Chiapparine house. She slipped and fell on her back. At the place where she had fallen there was a patch of ice about a quarter of an inch thick and extending about two and one-half feet from the drainpipe. At the side entrance of the Cesario house into the alleyway there was a light which was said to be illuminated.

Upon the trial William testified that he had seen ice in the alleyway prior to his wife's fall, and had told the defendant Chiapparine about the condition on previous occasions, but that " she just shrugged her shoulders." Weather reports indicated that rain had fallen between December 3 and December 5, and that on December 6, 7 and 8, the average temperatures were below the freezing point.

Vincenza sued the defendants Angela Chiapparine and Emelia Cesario for damages resulting from her injuries due to her fall, claiming that their negligence in failing to maintain the alleyway free from ice was the cause of her fall. William sued derivatively for the loss of his wife's services and for medical expenses incurred on her behalf. Both actions were dismissed at the end of the case. The trial court found that Vincenza was a licensee, and it held that she was bound by the limitations of the rule of law applicable to licensees. In addition, the court held that she was contributorily negligent as a matter of law.

We deal with the issue of contributory negligence first, for if Vincenza was negligent as a matter of law, we need not pursue the question of her status. As the case comes before us, we must on behalf of the plaintiffs " assume the establishment by adequate evidence of every issue upon which they rely concerning which there is some evidence, and the motion to dismiss should not have been granted in the trial court unless upon any issue there can be said to be in support thereof no evidence and no substantial inferences " (*African Metals Corp.* v. *Bullowa*, 288 N. Y. 78, 81; cf. *Meil* v. *Syracuse Constructors*, 19 A D 2d 10, 12).

In our opinion, the facts in this record do not fairly impel only the conclusion of Vincenza's contributory negligence as a matter of law (cf. *Nelson* v. *Nygren*, 259 N. Y. 71, 76). Her knowledge of the danger and the presence of an alternate route via the front door were circumstances from which the jury might draw the finding of negligence on her part. But again the jury might not (cf. *Palmer* v. *Dearing*, 93 N. Y. 7, 10; *Evans* v. *City of Utica*, 69 N. Y. 166, 169–170; *Twogood* v. *Mayor, etc., of N. Y.*, 102 N. Y. 216; *Bacher* v. *Bacher*, 265 App. Div. 1011; *Leshinsky* v. *Cohen*, 262 App. Div. 775; *Nimons* v. *Montgomery Ward & Co.*,

275 App. Div. 983). We conclude that reasonable minds might differ whether Vincenza exercised the degree of care required under the circumstances, and that the issue of contributory negligence must be decided by the jury (*Wheeler* v. *Orciuoli*, 18 A D 2d 1039; *Hanson* v. *Bloomingdale Bros.*, 13 A D 2d 1007).

Whether plaintiffs established facts from which the jury might find that the defendants were negligent presents a question more difficult of solution. Despite remonstrances that " Such an approach is unrealistic, arbitrary, and inelastic " (*Fernandez* v. *Consolidated Fisheries*, 98 Cal. App. 2d 91, 96), nevertheless, with respect to the liability of an occupier of land to one injured as a result of a condition encountered thereon, we are committed to a determination which is dependent on the legal status of the injured person. True it is that " In modern times the immunities have rightfully though gradually, been giving way to the overriding social view that where there is foreseeability of substantial harm landowners, as well as other members of society, should generally be subjected to a reasonable duty of care to avoid it " (*Taylor* v. *New Jersey Highway Auth.*, 22 N. J. 454, 463; cf. *Simmel* v. *New Jersey Coop. Co.*, 47 N. J. Super. 509, revd. on other grounds 28 N. J. 1). But thus far in our law the content of the duty owed by the landowner varies as the status of the injured party varies from trespasser, to licensee, to business invitee. In drawing these distinctions, the courts have categorized a social invitee as a licensee, though " a verbal paradox " may thereby seem to be engendered (*Wilder* v. *Ayers*, 2 A D 2d 354, 356, affd. 3 N Y 2d 725; *Kirkup* v. *Kirkup*, 279 App. Div. 803; *Sheingold* v. *Behrens*, 275 App. Div. 671). To date, the tendency to broaden the landowner's liability by treating licensee and business invitee alike has failed (cf. *Wolfson* v. *Chelist*, 284 S. W. 2d 447 [Mo.]), except in England where by statute the landowner is bound to use a common duty of reasonable care towards both the licensee and the invitee (Occupiers' Liability Act [1957], 5 & 6 Eliz. II, ch. 31, eff. Jan. 1, 1958).[2]

Vincenza and her husband, as visitors of the defendant Cesario, had the status of social guests, or licensees, in their relation to that defendant. As a social guest, Vincenza took the premises as she found them; and the defendant Cesario owed no greater duty than to avoid the maintenance of traps, hidden

---

2. Ohio courts have recognized that a social guest may not be a bare licensee (*Scheibel* v. *Lipton*, 156 Ohio St. 308), and have formulated the rule that the host owes the duty to his guest not to cause injury by any act of the host, or any activity carried on by the host on the premises (but, see, comment in 2 Harper and James, Law of Torts, § 27.11, pp. 1476–1478).

dangers, or wanton or reckless conduct, unless Vincenza was warned of their existence (*Wilder* v. *Ayers,* 2 A D 2d 354, 355–356, affd. 3 N Y 2d 725, *supra*). The facts in the record demonstrate that the ice which formed in the alleyway was not the result of any affirmative act by the defendant Cesario, and its presence could hardly take on the character of a trap. There is no evidence to indicate that the defendant Cesario knew that snow had begun to fall, or that the ice was covered with snow. We think that within the scope of the duty owed to a licensee, no liability rested on the defendant Cesario; and the trial court was correct in dismissing the complaint as to her, unless there was a breach of duty arising out of her relations with the defendant Chiapparine with respect to the easement over the alleyway. We shall advert below to such relations and to the duties arising therefrom.

The case against the defendant Chiapparine must be viewed in a different aspect. As guest of the defendant Cesario, Vincenza enjoyed at least the same status vis-a-vis Chiapparine as did her host (*Hilsenbeck* v. *Guhring,* 131 N. Y. 674, 675; *Appel* v. *Muller,* 262 N. Y. 278; *Pedro* v. *Newman,* 277 App. Div. 567; cf. *Streuber* v. *Meacham & Son,* 163 App. Div. 574; 17 N. Y. Jur., Easements and Licenses, § 135, pp. 411–412). The defendant Cesario owned an easement over five feet of Chiapparine's land in the alleyway (the greater portion) — such easement extending over the point where the ice lay and where the accident occurred. The easement, of course, was more than a personal privilege or license to use the land; it was an interest in the land itself (*Trustees of Southampton* v. *Jessup,* 162 N. Y. 122, 126; *Taylor* v. *Millard,* 118 N. Y. 244, 250).

Thus, in the use of the easement within the terms of the grant, and in her relations with Chiapparine, the defendant Cesario was a business invitee. Though on this record the genesis of the easement is not clear, the right to use the alleyway for the purposes defined either antedated, or, at least, came into existence simultaneously with, the purchase by Chiapparine of her land, for her deed of purchase expresses the conveyance as subject to the easement. Hence, an economic benefit accrued to her, for which the law imposed upon her the obligation to maintain her own land so as not to interfere with the use by the defendant Cesario of her land, including the easement, in a reasonably safe condition for the use of the alleyway by the defendant Cesario, her tenants, and her guests. Moreover, the arrangement of the alleyway, between the houses of the two defendants, with the garage at the rear serving the Cesario house, would naturally lead visitors of the defendant Cesario to use the

alleyway for the purposes of travel. Under either the theory of economic benefit or the theory of implied invitation, therefore, the duty of the defendant Chiapparine toward the defendant Cesario was the equivalent of the exercise of reasonable care in the maintenance of the premises (cf. 2 Harper and James, Law of Torts, § 27.12, pp. 1478–1488, 2 Restatement, Torts, § 332, p. 897; § 343, comments *a, b,* pp. 938–942).

The evidence shows that the water cast from the Chiapparine premises by the drainpipe created the hazardous ice condition in the alleyway, and that the defendant Chiapparine had knowledge of the condition over a period of time prior to the accident. These circumstances thrust upon the defendant Chiapparine a liability for the injuries suffered by Vincenza as a result of the hazardous condition (*Tremblay* v. *Harmony Mills,* 171 N. Y. 598, 600; *Cannon* v. *Pfleider,* 19 A D 2d 625; *Selig* v. *Mastoloni,* 283 App. Div. 741; *Schmidt* v. *Carper,* 270 App. Div. 411, affd. 296 N. Y. 791). We reach this conclusion because we see no reason not to invoke the rule which renders an abutting owner responsible for damages when, by artificial means, water is diverted to a public sidewalk where it freezes. That rule must be applied to an owner creating the same condition by the same means on an alleyway which is subject to an easement in favor of an abutting owner.

The argument is advanced that liability should not fall on the defendant Chiapparine in this case because of the use made of the alley by Vincenza. We are reminded that the language of the easement limits its use to " ingress and egress for pleasure automobiles to and from a garage ". We are told that Vincenza met her fall while using the alleyway not for these purposes, but for entrance to the Cesario house after walking on the sidewalk; and it is argued that she cannot be treated as a business invitee, for she exceeded the rights granted by the easement. We do not construe the easement so narrowly. Though the extent of an easement may be measured by the grant (*Herman* v. *Roberts,* 119 N. Y. 37), certainly it is clear that pedestrian use of the alleyway must have been contemplated, if only to reach and leave the garage where the automobile was stored. Clearly, too, the location of the side entrance of the Cesario house opening to the alleyway is evidence that pedestrian use of the alleyway was within the ambit of the easement (*Matter of Huie,* 22 Misc 2d 1028; 17 N. Y. Jur., Easements and Licenses, § 133, pp. 408–410). In our opinion, under the circumstances a question of fact for the jury was presented as to the scope of the easement use (*Bakeman* v. *Talbot,* 31 N. Y. 366, 369, 370; *Hammond* v. *Zehner,* 21 N. Y. 117; cf. *Merriam* v. *352 West*

*42nd St. Corp.,* 14 A D 2d 383; *Panzica* v. *Galasso,* 285 App. Div. 859).

In determining the status of Vincenza, we have considered that the defendant Cesario, as the owner of the dominant estate in the easement, was responsible for the maintenance of the easement and for the making of repairs to the premises for the use intended. No duty of maintenance and repairs was imposed upon the defendant Chiapparine as the owner of the servient estate (*Greenfarb* v. *R. S. K. Realty Corp.,* 256 N. Y. 130; *Matter of Schenectady Ry. Co.* v. *Greene,* 227 App. Div. 11, affd. 257 N. Y. 610). By reason of the existence of this duty on the part of Cesario, we perceive no difference arising in the relations of the defendants with Vincenza. If the defendant Cesario failed to carry out her duty of maintenance and repair, such failure was an act of omission or neglect for which Vincenza, as a social guest of the defendant Cesario, could not recover against her host. As against the defendant Chiapparine, however, Vincenza's status as invitee is not lost because of the nonperformance of contractual duties between Cesario and Chiapparine *inter se.* Moreover, Chiapparine's act in creating the icy condition was, under any view, precedent to the requirement that Cesario remove the condition.

Under the circumstances where a similar question was raised, a similar determination that an injured suitor was at once a licensee and invitee resulted (*Taneian* v. *Meghrigian,* 15 N. J. 267; *Sarna* v. *American Bosch Magneto Corp.,* 290 Mass. 340; cf. *Standard Oil Co.* v. *Scoville,* 132 Ind. App. 521). So long as the classification of visitors to land distinguishes between licensee and invitee in the degree of care which the landowner must exercise, the decision as to the character of the visitor and as to the liability of the landowner will logically vary, though the facts of the accident remain the same.

We reach the conclusion, therefore, that Vincenza was at once a licensee and invitee when she used the premises and sustained her injuries; and that, consequently, the judgment, insofar as it dismissed the complaint against the defendant Cesario should be affirmed, with costs; the action against her should be severed; and the judgment, insofar as it dismissed the complaint as against the defendant Chiapparine should be reversed on the law, and a new trial granted as between her and the plaintiffs, with costs to abide the event.

UGHETTA, Acting P. J., KLEINFELD, CHRIST and BRENNAN, JJ., concur.

Judgment, insofar as it is in favor of the defendant Emelia Cesario, affirmed, with costs; action as against her severed; and the judgment, insofar as it is in favor of the defendant Angela Chiapparine, reversed on the law and a new trial granted as between her and the plaintiffs, with costs to abide the event.

