Hixie **WHISENHUNT, Individually and as Administratrix of the Estate of J.W. Whisenhunt, deceased, Plaintiff,**

v.

The **SYLVANIA CORPORATION, National Fuel Gas Supply Corporation, Penn York Energy Corporation, National Gas Storage Corporation, Seneca Resources Corporation, National Fuel Gas Distribution Corporation, George J. Wilson, J.L. Henderson, Sr. and Evelyn J. Henderson, Defendants.**

**No. CIV–82–793E.**

United States District Court, W.D. New York.

Oct. 2, 1987.

Charles O. Ingraham, Binghamton, N.Y., for plaintiff.

Charles Ryan Desmond, Buffalo, N.Y., James F. Young, Elmira, N.Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This wrongful death action arises out of an accident in which J.W. Whisenhunt ("Whisenhunt") was killed and which occurred October 20, 1979 in the County of Allegany in the Western District of New York. Jurisdiction is premised on diversity of citizenship.

Defendants Wilson, J.L. Henderson, Sr. and Evelyn J. Henderson allegedly own real property through which defendant The Sylvania Corporation ("Sylvania"), a Pennsylvania corporation doing business in New York, had obtained an easement. Allegedly, Sylvania and defendants National Fuel Gas Supply Corporation, Penn York Energy Corporation, National Gas Storage Corporation, Seneca Resources Corporation and National Fuel Gas Distribution Corporation are owned and controlled by National Fuel Gas Company. These subsidiary corporations had contracted with Joyce Western Corporation, Whisenhunt's employer at the time of the accident, for the excavation, installation and general construction of a pipeline on said realty for the purposes of transporting gas and oil.

Whisenhunt had been a welder by trade and had lived with the plaintiff and their two daughters in Arkansas. He had been employed by Joyce Western Corporation at the New York construction site for approximately four weeks prior to the accident.

On the particular day Whisenhunt had been working on a section of the pipeline which was on a slope and immediately adjacent to an excavation. This portion of the pipeline, because of the surrounding terrain, was held by wooden supports in an elevated position. The Complaint alleges that, while Whisenhunt was performing his duties as a welder on the pipeline, it rolled off the supports and threw him into the excavation. Whisenhunt was then fatally injured when the pipeline landed upon him.

Whisenhunt died intestate. His widow, also an Arkansas resident, was appointed Administratrix of his estate by an order of a Probate Court in Arkansas and has instituted this action on her own behalf and on behalf of the estate.

The Complaint asserts seven causes of action. The widow seeks to recover damages from the defendant corporations on her and her children's behalves for the loss of companionship of the decedent and for mental anguish suffered. The estate seeks damages resulting from the defendant corporations' alleged violations of state and federal safety codes which violations are said to have been proximate causes of Whisenhunt's death. The estate also seeks damages from the Hendersons and Wilson on the ground that these defendants are jointly liable for the alleged negligence of

the corporations. The estate further seeks to recover damages for conscious pain and suffering incurred by Whisenhunt from the time of the accident until his death later that same day. Finally, the widow seeks to recover from the defendants damages for mental anguish suffered by her and for her loss of decedent's society and for loss of his spousal services.

■ The defendant corporations have moved to dismiss four of the seven causes of action for failure to state a claim upon which relief can be granted. They contend that such causes of action are time-barred by New York's statute of limitations inasmuch as the actions were not commenced within two years of the death. Plaintiffs assert, however, that they were timely commenced pursuant to Arkansas's three-year statute. Hence the issue determinative of such defendants' motion to dismiss is which statute of limitations is to govern this wrongful death action.

It is well-settled under the doctrine pronounced in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that a federal court in a diversity jurisdiction case must apply the substantive law of the state in which it sits. *See Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). This Court must apply the law which New York's courts would have applied in adjudicating the rights and liabilities of the parties. This includes New York's conflict of laws rules. *Gore v. Northeast Airlines, Inc.*, 373 F.2d 717, 720–721 (2d Cir.1967). Moreover and despite such defendants' arguments to the contrary, this Court must apply the statute of limitations which a New York court would apply. *See Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 73 S.Ct. 856, 97 L.Ed. 1211 (1953); 2 J. Moore, *Moore's Federal Practice* ¶ 3.07[2] at 3–51 to 3–53 (2d Ed.1982).

New York has traditionally regarded statutes of limitations as procedural for choice of law purposes, and hence applies its own period of limitations to foreign claims. *Association for Preserv. of Freedom of Choice v. Simon*, 299 F.2d 212, 214 (2d Cir.1962). An exception to this general rule exists when the right sued upon was *created* by a foreign statute under which the commencement of an action within a specified period is a condition precedent to securing relief. *See Bournias v. Atlantic Maritime Co.*, 220 F.2d 152, 155 (2d Cir. 1955). When the foreign state's statute of limitations is regarded as barring suit on the foreign right, such statute is enforced as part of the foreign state's substantive law. *Ibid;* Reinstatement (Second) of Conflict of Laws §§ 142, 143 (1971). The determination by New York courts whether a foreign limitation in a particular statute is to be regarded as substantive or procedural depends upon how the statute is construed by the courts of the state which created the right. *Chartener v. Kice*, 270 F.Supp. 432, 436 (E.D.N.Y.1967); *Hartford Accident & Indem. Co. v. Eastern Air Lines*, 155 F.Supp. 263, 264–265 (S.D.N.Y.1957). The Arkansas courts have construed both its wrongful death statute and the accompanying three-year period of limitations [1] as substantive in nature. *Sandusky v. Fuel Elec. Corp.*, 266 Ark. 588, 590, 587 S.W.2d 37, 38 (1979); *Nelson v. Eckert*, 231 Ark. 348, 329 S.W.2d 426 (1959). Accordingly, the plaintiff contends that, if New York courts would accept Arkansas substantive law as the rule of decision, they would also accept Arkansas's three-year statute of limitations as part of that substantive law. The issue to be decided therefore is whose substantive law is to govern.

In *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), the traditional choice of law rule which invariably looked to the law of the place where the tort occurred was rejected. Instead, the "center of gravity" or "grouping of contacts" doctrine was adopted to give to the place with the most interest in the conflict the most control over the legal issues and thereby allow for the application of the policy of the state which is most concerned with the outcome of the litiga-

---

1. Ark.Stat.Ann. §§ 27–906 and 27–907.

tion. *Id.* at 481–482, 240 N.Y.S.2d 743, 191 N.E.2d 279. In determining which jurisdiction has the predominant interest in a given issue, the significant factors are those relating to the underlying policy or purpose of the particular law which is in conflict. *Miller v. Miller,* 22 N.Y.2d 12, 15–16, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968). The disadvantage of this shift away from the *locus delictus* became evident as time went on and the ad hoc determinations created uncertainty and inconsistencies. *See, Neumeier v. Kuehner ("Neumeier"),* 31 N.Y.2d 121, 127, 335 N.Y.S.2d 64, 386 N.E.2d 454 (1972). A "few rules of general applicability" were accepted as "sound" where conflict of law issues arose in cases involving guest statutes. *Id.* at 128, 335 N.Y.S.2d 64, 386 N.E.2d 454.[2]

In 1978 New York's highest court "signaled an apparent retreat from its modern approach." *O'Rourke v. Eastern Air Lines, Inc.,* 730 F.2d 842, 848 (2d Cir.1984). The per curiam decision in a personal injury action resulting from the crash of a private plane stated that *"lex loci delicti*

remains the general rule in tort cases to be displaced only in extraordinary circumstances." *Cousins v. Instrument Flyers, Inc. ("Cousins"),* 44 N.Y.2d 698, 699, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978). The only decision of the New York Court of Appeals to address the conflicts issue in depth since that time ignores *Cousins* and utilizes a balance between the "relative interests of the domicile and locus jurisdictions * * *." *Schultz v. Boy Scouts of America, Inc. ("Schultz"),* 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985). According to such an analysis *lex locus* will still apply when the statutes in conflict are "conduct regulating" because in those situations "the locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance * * *." *Ibid.*

In the instant case the wrongful death laws of each state protect substantially the same substantive state interests.[3] The

**2.** " '1. When the guest-passenger and the host-driver are domiciled in the same state, and the car is there registered, the law of that state should control * * *.

" '2. When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable for reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not—in the absence of special circumstances—be permitted to interpose the law of his state as a defense.

" '3. In other situations, when the passenger and driver are domiciled in different states, the rule is necessarily less categorical. Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.' " This quotation in *Neumeier* is from *Tooker v. Lopez,* 24 N.Y.2d 569, 585, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969).

**3.** Arkansas's wrongful death statute provides:
"27–906. Wrongful death actions and their survivorship.—Whenever the death of a person shall be caused by a wrongful act, neglect

or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company, or corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death may have ben [been] caused under such circumstances as amount in law to a felony. The cause of action herein created shall survive the death of the person wrongfully causing the death of another and may be brought, maintained or revived against the personal representatives of the person wrongfully causing the death of another."

New York's wrongful death statute, section 5–4.1 of its Estates, Powers and Trusts Law provides:
"1. The personal representative, duly appointed in this state or any other jurisdiction, of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued. Such an action must be commenced within two years after the decedent's death. When the distributees do not participate in the administration of the dece-

most significant difference between the respective laws is that Arkansas has provided a three-year statute of limitations while the period of its New York counterpart is only two years.[4] Arkansas moreover has characterized its limitations period as a "built in" statute of limitations and integrated it into the substance of its wrongful death statute. *See, Nelson v. Eckert, supra.* The conflicting rules cannot be characterized as conduct regulating.

When the rules in conflict relate to the allocation of losses the interest of the locus is minimal and the jurisdiction of the common domicile becomes paramount. *Schultz, supra.* However, when the parties do not share a common domicile, the second or third guideline in *Neumeier* will dictate the result. *See, supra* fn. 2. *Schultz, supra,* at 201, 491 N.Y.S.2d 90, 480 N.E.2d 679.

The *Schultz* majority's interest analysis and failure to mention *Cousins* makes it unclear how that case is to be regarded. In his dissent in *Schultz* Judge Jasen declared that, notwithstanding the majority's *sub silentio* disavowal of *Cousins*, the general rule in tort cases in New York is the "traditional principle of *lex loci* " to be displaced only in extraordinary circumstances. *Id.* at 209, 491 N.Y.S.2d 90, 480 N.E.2d 679. Justice Brennan referred to this holding of *Cousins* as suggestive of which law New York would apply were it considering a choice of law question. *International Paper Co. v. Ouellette,* —— U.S. ——, ——, 107 S.Ct. 805, 820 fn. 3, 93 L.Ed.2d 883 (1987) (Brennan, J., concurring in part and dissenting in part).

If *lex loci* is the rule in New York then this court is satisfied that the substantive law of that state would govern inasmuch as the fatality was sustained there.[5] If, instead, a governing interests analysis would properly be employed, the interest of Arkansas, the plaintiff's domicile, in seeing that the decedent's dependents are adequately cared for during the period in which the decedent would have continued to support them and the interest of New York in protecting its citizens from stale claims must be balanced.

In a wrongful death action brought by the dependents of the victims of an airplane crash against corporations who were not New York domiciliaries, the United States Court of Appeals for the Second Circuit found that the interest of the dependents' place of domicile in seeing that its citizens received just compensation did not overcome New York's interest in seeing its own laws applied as the place where the crash occurred and as the forum state. *O'Rourke v. Eastern Airlines, Inc., supra,* at 850. It is to be noted that in *O'Rourke,* as here, the conflicting laws were not conduct regulating, and that New York's interest in the present action exceeds that in *O'Rourke* because all of the instant defendants are New York citizens and because the decedent had been working in New York for four weeks before his death as opposed to the New York situs being merely fortuitous.

*O'Rourke* however was decided without the benefit of *Schultz* and relied on *Cousins* as the last word in New York conflict issues. In addressing the split domicile situation where the parties were domiciliaries of different jurisdictions and the locus of the tort was a third jurisdiction, *Schultz* declared that the third *Neumeier* rule would apply although the litigation did not involve a guest statute.[6] Because defendants National Gas Storage Corporation, Penn York Energy Corporation, National Fuel Gas Distribution Corporation and Wil-

---

dent's estate under a will appointing an executor who refuses to bring such action, the distributees are entitled to have an administrator appointed to prosecute the action for their benefit."

**4.** *Compare* section 5–4.1(1) (two-year limitation) *with* section 27–907 of Arkansas's Annotated Statutes (1981) (three-year limitation).

**5.** Extraordinary circumstances that might displace the law of New York are not present.

**6.** The plaintiffs in *Schultz* sought damages for personal injuries they and their sons suffered when the boys were sexually abused by the defendant and for wrongful death after the younger son committed suicide.

son are New York domiciliaries [7] according to the Complaint and because the relevant conduct occurred in New York, the second *Neumeier* rule would govern the choice of law inquiry with respect to them. The period of limitations having run, New York would not hold them liable. Liability by reason of the law of the plaintiff's domicile will therefore not be imposed.

The remaining corporate defendants, while maintaining principal places of business in New York, are domiciliaries of either Pennsylvania or New Jersey. Thus, according to the third *Neumeier* rule, the law of New York as locus of the tort would govern unless displacing it would advance the relevant substantive law purposes without impairing the working of the multi-state system or causing great uncertainty. *Schultz, supra,* 65 N.Y.2d at 201, 491 N.Y. S.2d 90, 480 N.E.2d 679. Displacing New York law would advance the purpose of the Arkansas statute of limitations, the rights conferred by which statute were made part of the substantive rights created by its wrongful death statutory scheme. Such advancement however would not be without that confusion to litigants which is cautioned against in the *Neumeier* rule. The decedent accepted a work assignment in New York and all acts connected with his death took place here. The duties owed to construction workers in New York is governed by New York law, as is any duty imposed upon the land owner defendants. The defendants could reasonably anticipate that any litigation arising from the accident would be instituted in New York.

Whether the rule of *lex locus delictus,* a government interest test or a *Neumeier* analysis is applied, it is the substantive law of the state of New York that should govern the issues presented in this case. The filing of the Complaint was untimely under New York law, and hence the defendant corporations' motion to dismiss the first, second, third and seventh causes of action will be granted.

■ Finally, Wilson has moved to dismiss the fifth, sixth and seventh causes of action contending that the granting of an easement to the defendant corporations does not make him liable for the negligence, if any, of those defendants.[8] There is little indication in the present record, however, as to the exact nature of the relationship between Wilson and such corporations.[9] Although it is generally true that under New York law the beneficial owner of the easement is responsible for its maintenance and that no duty of maintenance is imposed upon the owner of the servient estate, *Cesario v. Chiapparine,* 21 A.D.2d 272, 250 N.Y.S.2d 584 (2d Dept. 1964), the record does not sufficiently indicate the nature and true extent of the rights and obligations of the respective defendants under the easement. Accordingly, Wilson's motion to dismiss must be denied.

It is hereby ORDERED that the motions of the defendant corporations to dismiss the first, second, third and seventh causes of action are granted and that Wilson's motion to dismiss the fifth, sixth and seventh causes of action is denied.

---

**7.** The state of incorporation determines the domicile of a corporation. *Cream of Wheat Co. v. Grand Forks,* 253 U.S. 325, 328, 40 S.Ct. 558, 559, 64 L.Ed. 931 (1920).

**8.** It is noted that Wilson did not make the statute of limitations a basis for his motion, although he did argue that the plaintiff was untimely under New York law in his supporting memorandum. The statute of limitations as an affirmative defense does not appear in his Answer and must be deemed waived.

**9.** In his Amended Answer Wilson sets forth in his second cross-claim against Sylvania what appears to be a summarization of the terms and conditions of the right-of-way and easement granted to Sylvania. This, however, is insufficient to prove conclusively the nature of the relationship.