Fuld, J.
On Friday, September 16, 1960, Miss Georgia Babcock and her friends, Mr. and Mrs. William Jackson, all residents of Rochester, left that city in Mr. Jackson’s automobile, Miss Babcock as guest, for a week-end trip to Canada. Some hours later, as Mr. Jackson was driving in the Province of Ontario, he apparently lost control of the ear; it went off the highway into an adjacent stone wall, and Miss Babcock was seriously injured. Upon her return to this State, she brought *477 the present action against William Jackson, alleging negligence on his part in operating his automobile.[1]
At the time of the accident, there was in force in Ontario a statute providing that ‘ ‘ the owner or driver of a motor vehicle, other than a vehicle operated in the business of carrying passengers for compensation, is not liable for any loss or damage resulting from bodily injury to, or the death of any person being carried in * * * the motor vehicle ” (Highway Traffic Act of Province of Ontario [Ontario Bev. Stat. (1960), eh. 172], § 105, subd. [2]). Even though no such bar is recognized under this State’s substantive law of torts (see, e.g., Higgins v. Mason, 255 N. Y. 104, 108; Nelson v. Nygren, 259 N. Y. 71), the defendant moved to dismiss the complaint on the ground that the law of the place where the accident occurred governs and that Ontario’s guest statute bars recovery. The court at Special Term, agreeing with the defendant, granted the motion and the Appellate Division, over a strong dissent by Justice Halpern, affirmed the judgment of dismissal without opinion.
The question presented is simply drawn. Shall the law of the place of the tort[2] invariably govern the availability of relief for the tort or shall the applicable choice of law rule also reflect a consideration of other factors which are relevant to the purposes served by the enforcement or denial of the remedy?
The traditional choice of law rule, embodied in the original Bestatement of Conflict of Laws (§ 384), and until recently unquestioningly followed in this court (see, e.g., Poplar v. Bourjois, Inc., 298 N. Y. 62, 66; Kaufman v. American Youth Hostels, 5 N Y 2d 1016, modfg. 6 A D 2d 223), has been that the substantive rights and liabilities arising out of a tortious occurrence are determinable by the law of the place of the tort. (See Goodrich, Conflict of Laws [3d ed., 1949], p. 260; Leflar, The Law of Conflict of Laws [1959], p. 207; Stumberg, Principles of Conflict of Laws [2d ed., 1951], p. 182.) It had its conceptual foundation in the vested rights doctrine, namely, that a right to recover for a foreign tort owes its creation to the law of the
*478 jurisdiction where the injury occurred and depends for its existence and extent solely on such law. (See Hancock, Torts in the Conflict of Laws [1942], pp. 30-36; Beese, The Ever Changing Buies of Choice of Law, Nederlands Tijdschrift Voor Internationaal Beeht [1962], 389.) Although espoused by such great figures as Justice Holmes (see Slater v. Mexican Nat. R. R. Co., 194 U. S. 120) and Professor Beale (2 Conflict of Laws [1935], pp. 1286-1292), the vested rights doctrine has long since been discredited because it fails to take account of underlying policy considerations in evaluating the significance to be ascribed to the circumstance that an act had a foreign situs in determining the rights and liabilities which arise out of that act.[3] ‘1 The vice of the vested rights theory ”, it has been aptly stated, “ is that it affects to decide concrete cases upon generalities which do not state the practical considerations involved ”. (Yntema, The Hornbook Method and the Conflict of Laws, 37 Yale L. J. 468, 482-483.) More particularly, as applied to torts, the theory ignores the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues. It is for this very reason that, despite the advantages of certainty, ease of application and predictability which it affords (see Cheatham and Beese, Choice of the Applicable Law, 52 Col. L. Bev. 959, 976), there has in recent years been increasing criticism of the traditional rule by commentators [4] and a judicial trend towards its abandonment or modification.[5]
*479 Significantly, it was dissatisfaction with u the mechanical formulae of the conflicts of law ” (Vanston Committee v. Green, 329 U. S. 156, 162) which led to judicial departure from similarly inflexible choice of law rules in the field of contracts, grounded, like the torts rule, on the vested rights doctrine. According to those traditional rules, matters bearing upon the execution, interpretation and validity of a contract were determinable by the internal law of the place where the contract was made, while matters connected with their performance were regulated by the internal law of the place where the contract was to be performed. (See Swift & Co. v. Bankers Trust Co., 280 N. Y. 135, 141; see, also, Be statement, Conflict of Laws, §§ 332, 358; Goodrich, Conflict of Laws [3d ed., 1949], pp. 342-343.)
In Auten v. Auten (308 N. Y. 155), however, this court abandoned such rules and applied what has been termed the ‘‘ center of gravity ” or “ grouping of contacts ” theory of the conflict of laws. “ Under this theory,” we declared in the Auten case, “ the courts, instead of regarding as conclusive the parties’ intention or the place of making or performance, lay emphasis rather upon the law of the place 1 which has the most significant contacts with the matter in dispute ’ ” (308 N. Y., at p. 160). The 1 ‘ center of gravity ’ ’ rule of Auten has not only been applied in other cases in this State,[6] as well as in other jurisdictions,[7] but has supplanted the prior rigid and set contract rules in the most current draft of the Be statement of Conflict of Laws. (See Bestatement, Second, Conflict of Laws, § 332b [Tentative Draft No. 6, I960].)
Bealization of the unjust and anomalous results which may ensue from application of the traditional rule in tort cases has also prompted judicial search for a more satisfactory alternative in that area. In the much discussed case of Kilberg v. Northeast Airlines (9 N Y 2d 34), this court declined to apply the law of the place of the tort as respects the issue of the quantum of the recovery in a death action arising out of an airplane crash, *480 where the decedent had been a New York resident and his relationship with the defendant airline had originated in this State. In his opinion for the court, Chief Judge Desmond described, with force and logic, the shortcomings of the traditional rule (9 NY 2d, at p. 39):
“ Modern conditions make it unjust and anomalous to subject the traveling citizen of this State to the varying laws of other States through and over which they move. * * * An air traveler from New York may in a flight of a few hours’ duration pass through * * * commonwealths [limiting death damage awards]. His plane may meet with disaster in a State he never intended to cross but into which the plane has flown because of bad weather or other unexpected developments, or an airplane’s catastrophic descent may begin in one State and end in another. The place of injury becomes entirely fortuitous. Our courts should if possible provide protection for our own State’s people against unfair and anachronistic treatment of the lawsuits which result from these disasters.”
The emphasis in Kilberg was plainly that the merely fortuitous circumstance that the wrong and injury occurred in Massachusetts did not give that State a controlling concern or interest in the amount of the tort recovery as against the competing interest of New York in providing its residents or users of transportation facilities there originating with full compensation for wrongful death. Although the Kilberg case did not expressly adopt the “ center of' gravity ” theory, its weighing of the contacts or interests of the respective jurisdictions to determine their bearing on the issue of the extent of the recovery is consistent with that approach. (See Leflar, Conflict of Laws, 1961 Ann. Sur. Amer. Law, 29, 45.)
The same judicial disposition is also reflected in a variety of other decisions, some of recent date, others of earlier origin, relating to workmen’s compensation,[8] tortious occurrences aris *481 ing out of a contract,[9] issues affecting the survival of a tort right of action[10] and intrafamilial immunity from tort[11] and situations involving a form of statutory liability.[12] These numerous eases differ in many ways but they are all similar in two important respects. First, by one rationale or another, they rejected the inexorable application of the law of the place of the tort where that place has no reasonable or relevant interest in the particular issue involved. And, second, in each of these cases the courts, after examining the particular circumstances presented, applied the law of some jurisdiction other than the place of the tort because it had a more compelling interest in the application of its law to the legal issue involved.
The “ center of gravity ” or “ grouping of contacts ” doctrine adopted by this court in conflicts cases involving contracts impresses us as likewise affording the appropriate approach for accommodating the competing interests in tort cases with multi-State contacts. Justice, fairness and “ the best practical result ” (Swift & Co. v. Bankers Trust Co., 280 N. Y. 135, 141, supra) may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation. The merit of such a rule is that “ it gives to the place ‘ having the most interest in the problem ’ paramount control over the legal issues arising out of a particular factual context ” and thereby allows the forum to apply “ the policy of the jurisdiction 1 most *482 intimately concerned' with the outcome of [the] particular litigation.’ ” (Auten v. Auten, 308 N. Y. 155, 161, supra.)
Such, indeed, is the approach adopted in the most recent revision of the Conflict of Laws Restatement in the field of torts. According to the principles there set out, “ The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort ” (Restatement, Second, Conflict of Laws, § 379 [1]; also Introductory Note to Topic 1 of Chapter 9, p. 3 [Tentative Draft No. 8, 1963]), and the relative importance of the relationships or contacts of the respective jurisdictions is to be evaluated in the light of ‘1 the issues, the character of the tort and the relevant purposes of the tort rules involved” (§ 379[2], [3]).
Comparison of the relative “ contacts ” and “ interests ” of New York and Ontario in this litigation, vis-a-vis the issue here presented, makes it clear that the concern of New York is unquestionably the greater and more direct and that the interest of Ontario is at best minimal. The present action involves injuries sustained by a New York guest as the result of the negligence of a New York host in the operation of an automobile, garaged, licensed and undoubtedly insured in New York, in the course of a week-end journey which began and was to end there. In sharp contrast, Ontario’s sole relationship with the occurrence is the purely adventitious circumstance that the accident occurred there.
New York’s policy of requiring a tort-feasor to compensate his guest for injuries caused by his negligence cannot be doubted — as attested by the fact that the Legislature of this State has repeatedly refused to enact a statute denying or limiting recovery in such cases (see, e.g., 1930 Sen. Int. No. 339, Pr. No. 349; 1935 Sen. Int. No. 168, Pr. No. 170; 1960 Sen. Int. No. 3662, Pr. No. 3967) —and our courts have neither reason nor warrant for departing from that policy simply because the accident, solely affecting New York residents and arising out of the operation of a New York based automobile, happened beyond its borders. Per contra, Ontario has no conceivable interest in denying a remedy to a New York guest against his New York host for injuries suffered in Ontario by reason of conduct which was tortious under Ontario law. The object of Ontario’s guest statute, it has been said, is “ to prevent the fraudulent assertion *483 of claims by passengers, in collusion with the drivers, against insurance companies ” (Survey of Canadian Legislation, 1 TJ. Toronto L. J. 358, 366) and, quite obviously, the fraudulent claims intended to be prevented by the statute are those asserted against Ontario defendants and their insurance carriers, not New York defendants and their insurance carriers. "Whether New York defendants are imposed upon or their insurers defrauded by a New York plaintiff is scarcely a valid legislative concern of Ontario simply because the accident occurred there, any more so than if the accident had happened in some other jurisdiction.
It is hardly necessary to say that Ontario’s interest is quite different from what it would have been had the issue related to the manner in which the defendant had been driving his ear at the time of the accident. "Where the defendant’s exercise of due care in the operation of his automobile is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction’s interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place.
The issue here, however, is not whether the defendant offended against a rule of the road prescribed by Ontario for motorists generally or whether' he violated some standard of conduct imposed by that jurisdiction, but rather whether the plaintiff, because she was a guest in the defendant’s automobile, is barred from recovering damages for a wrong concededly committed. As to that issue, it is New York, the place where the parties resided, where their guest-host relationship arose and where the trip began and was to end, rather than Ontario, the place of the fortuitous occurrence of the accident, which has the dominant contacts and the superior claim for application of its law. Although the rightness or wrongness of defendant’s conduct may depend upon the law of the particular jurisdiction through which the automobile passes, the rights and liabilities of the parties which stem from their guest-host relationship should remain constant and not vary and shift as the automobile proceeds from place to place. Indeed, such a result, we note, *484 accords with ‘ ‘ the interests of the host in procuring liability insurance adequate under the applicable law, and the interests of his insurer in reasonable calculability of the premium.” (Ehrenzweig1, Guest Statutes in the Conflict of Laws, 69 Yale L. J. 595, 603.)
Although the traditional rule has in the past been applied by this court in giving controlling effect to the guest statute of the foreign jurisdiction in which the accident occurred (see, e.g., Smith v. Clute, 277 N. Y. 407; Kerfoot v. Kelley, 294 N. Y. 288; Naphtali v. Lafazan, 8 N Y 2d 1097, affg. 8 A D 2d 22), it is not amiss to point out that the question here posed was neither raised nor considered in those cases and that the question has never been presented in so stark a manner as in the case before us with a statute so unique as Ontario’s.[13] Be that as it may, however, reconsideration of the inflexible traditional rule persuades us, as already indicated, that, in failing to take into account essential policy considerations and objectives, its application may lead to unjust and anomalous results. This being so, the rule, formulated as it was by the courts, should be discarded. (Cf. Bing v. Thunig, 2 N Y 2d 656, 667; Woods v. Lancet, 303 N. Y. 349, 355.)[14]
In conclusion, then, there is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction. Where the issue involves standards of conduct, it is more than likely that it is the law of the place, of the tort which will be controlling but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented.
*485 The judgment appealed from should be reversed, with costs, and the motion to dismiss the complaint denied.

. Jackson having died after the commencement of the suit, his executrix was substituted in his place as defendant.

. In this case, as in nearly all such cases, the conduct causing injury and the injury itself occurred in the same jurisdiction. The phrase “ place of the tort,” as distinguished from “place of wrong” and “place of injury,” is used herein to designate the place where both the wrong and the injury took place.

. See Cavers, A Critique of the Choiee-of-Law Problem, 47 Harv. L. Rev. 173, 178; Cheatham, American Theories of Conflict of Laws: Their Role and Utility, 58 Harv. L. Rev. 361, 379-385; Cook, The Logical and Legal Bases of the Conflict of Laws, 33 Yale L. J. 457, 479 et seq.) Hill, Governmental Interest and the Conflict of Laws, 27 U. Chi. L. Rev. 463; Lorenzen, Territoriality, Public (Policy and the Conflict of Laws, 33 Yale L. J. 736, 746-749; Yntema, The Hornbook Method and the Conflict of Laws, 37 Yale L. J. 468, 474 et seq.

. See Dicey, Conflict of Laws (7th ed., 1958), p. 937 et seq.) Leñar, The Law of Conflict of Laws (1959), p. 217 et seq.) Stumberg, Principles of Conflict of Laws (2d ed., 1951), p. 201 et seq.) Morris, The Proper Law of a Tort, 64 Harv. L. Rev. 881; Ehrenzweig, Guest Statutes in the Conflict of Laws, 69 Yale L. J. 595; Currie, Survival of Actions: Adjudication versus Automation in the Conflict of Laws, 10 Stan. L. Rev. 205.

. See, e.g., Richards v. United States, 369 U. S. 1, 12-13; Grant v. McAuliffe, 41 Cal. 2d 859; Schmidt v. Driscoll Hotel, 249 Minn. 376; Haumschild v. Continental Cas. Co., 7 Wis. 2d 130.

. See, e.g., Haag v. Barnes, 9 N Y 2d 554; Zogg v. Penn Mut. Life Ins. Co., 276 F. 2d 861 (2d Cir.).

. See, e.g., Jansson v. Swedish Amer. Line, 185 F. 2d 212, 218-219; Barber Co. v. Hughes, 223 Ind. 570, 586; Kievit v. Loyal Protective Life Ins. Co., 34 N. J. 475, 491-493; Estate of Knippel, 7 Wis. 2d 335, 343-345.

. See, e.g., Alaska Packers Assn. v. Industrial Acc. Comm., 294 U. S. 532; Matter of Nashko v. Standard Water Proofing Co., 4 N Y 2d 199; Kennerson v. Thames Towboat Co., 89 Conn. 367; Pierce v. Bekins Van & Stor. Co., 185 Ia. 1346; Aleckson v. Kennedy Motor Sales Co., 238 Minn. 110; see, also, 2 Larson, Workmen’s Compensation Law, § 84.

. See Dyke v. Erie Ry. Co., 45 N. Y. 113; see, also, Bowles v. Zimmer Mfg. Co., 277 F. 2d 868 (breach of warranty).

. See Grant v. McAuliffe, 41 Cal. 2d 859, supra; Herzog v. Stern, 264 N. Y. 379; see, also, Currie, Survival of Actions: Adjudication versus Automation in the Conflict of Laws, 10 Stan. L. Rev. 205.

. See Emery v. Emery, 45 Cal. 2d 421; Koplik v. C. P. Trucking Corp., 27 N. J. 1; Mertz v. Mertz, 271 N. Y. 466; Haumschild v. Continental Cas. Co., 7 Wis. 2d 130, supra; see, also, Ehrenzweig, Parental Immunity in the Conflict of Laws, 23 U. Chi. L. Rev. 474; Ford, Interspousal Liability for Automobile Accidents in the Conflict of Laws, 15 U. Pitt. L. Rev. 397. But ef. Coster v. Coster, 289 N. Y. 438.

. See Schmidt v. Driscoll Hotel, 249 Minn. 376, supra; Osborn v. Borchetta, 20 Conn. S. 163; Levy v. Daniels’ U-Drive Auto Renting Co., 108 Conn. 333. See, also, Daily v. Somberg, 28 N. J. 372 (effect of release to one of several parties jointly liable for plaintiff’s injury).

. We note that the Supreme Court of Canada has upheld the refusal of the Quebec courts to apply the Ontario guest statute to an accident affecting Quebec residents which occurred in Ontario. (See McLean v. Pettigrew, [1945] 2 D. L. R. 65.) This decision was dictated by the court’s resort to the English choice of law rule, whereby the foreign tort is deemed actionable if actionable by the law. of the forum and not justifiable by the law of the place of the tort. (See Phillips v. Eyre, [1870] L. R. 6 Q. B. 1, 28-29; see, also, Dicey, Conflict of Laws [7th ed., 1958], p. 940.) However that may be, it would seem incongruous for this court to apply Ontario’s unique statute in circumstances under which its own sister Provinces would not.

. It of course follows from our decision herein that, given the facts of the present ease, the result would be the same and the law of New York applied where the foreign guest statute requires a showing of gross negligence.