Jean HALE, Executrix of the Estate of Bennett Reynolds, Plaintiff-Appellant,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.

No. 83–5171.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 23, 1984.

Decided Dec. 20, 1984.

As Amended Dec. 21, 1984.

As Corrected Jan. 16, 1985.

---

Wellford, Circuit Judge, filed a dissenting opinion.

Russell H. Davis, Jr. (argued), Strattor, May & Hays, Pikeville, Ky., for plaintiff-appellant.

Michael J. Schmitt (argued), Wells, Porter & Schmitt, Paintsville, Ky., for defendant-appellee.

Before EDWARDS and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

This appeal is from a judgment for appellee insurance company entered by a U.S. District Judge in the Eastern District of Kentucky after the parties had submitted cross-motions for summary judgment. Federal jurisdiction is invoked under the diversity jurisdiction of this court. The case involves an important question of Kentucky insurance law as stated in Kentucky statutes and interpreted by a recent (1982) decision by the Supreme Court of Kentucky.

## Statement of Facts

Bennett Reynolds, the insured, purchased group insurance coverage through his employer and was issued a certificate of insurance. The master policy holder was Reynolds' employer, Kentland-Elkhorn Coal Co., a subsidiary of Pittston Corporation, and the policy was issued by the Life Insurance Company of North America ("LICNA"). Kentland-Elkhorn is located in Kentucky, and the insurance was purchased in Kentucky by Reynolds. Pittston Corporation does business out of Dante, Virginia. LICNA does business out of Philadelphia, Pennsylvania.

Bennett Reynolds, a coal miner, purchased group insurance with an effective coverage date of April 1, 1972. He elected "Plan B," which included "mine exposure" coverage. The certificate of insurance, which was also Reynolds' application for insurance, stated, "Amount of Principal Sum" and the figure $150,000. It also stated, the insured person "is insured under and subject to the terms, conditions and limits of liability of the policy as above specified." The referenced policy number, OK–2034, refers to the master policy held by the Pittston Company (Kentland-Elkhorn).

On February 10, 1975, Bennett Reynolds was involved in a mining accident which permanently and totally disabled him. His insurance coverage for this event, as stated in the certificate of insurance, was as follows:

Coverage B-Permanent Total Disability (Not Applicable to Dependents):—After one year of "continuous total disability," and if the Insured is then "permanently and totally disabled" the Company will pay a Permanent Total Disability Benefit equal to the difference between the applicable Principal Sum and any payments under Coverage A on account of such injuries.

At the outset, we note that the addition of the words "25% of" following the word "between" in line five above would have settled this controversy.

As will be obvious from what follows, we do not consider the omission to have been other than purposeful.

Reynolds commenced this action on August 16, 1977, when LICNA refused to pay the $150,000 principal sum. No total disability benefits appear to have been paid either to Bennett Reynolds during the years of his injury-produced total disability or to his widow since his death.

Bennett Reynolds lived through the trial of this case and testified before the Magistrate. He died after the adverse decisions by the Magistrate and the District Judge. His widow has prosecuted the appeal to this court.

LICNA refused to pay Reynolds $150,000 in reliance on a rider which was contained in the *master policy*, but not stated anywhere in Bennett Reynolds' certificate of insurance. The rider, concerning which Reynolds claimed he had no knowledge until LICNA asserted it as a bar to a full principal sum recovery, stated:

### RIDER NUMBER EIGHT

It is understood and agreed that Policy Rider One of this policy is deleted in its entirety and the following is substituted therefor:

Plan A—Excludes coverage for the insured while engaging in mining activities.

Plan B—Provides 25% of the insured's otherwise applicable Principal Sum Benefit while engaging in mining activities provided such activities are performed on the actual site of the mine and such activities are authorized and approved by the Policyholder.[1]

The District Judge granted LICNA's motion for summary judgment and filed a Memorandum Opinion on February 8, 1983. The District Court ruled the insured was entitled to recover 25% of the applicable principal sum, or $37,500, relying on a similar case which arose under the same insurance policy. *Willard Fuller v. Life Insurance Company of North America*, No.

76–801 (E.D.Ky. Sept. 7, 1979), *aff'd by order*, No. 79–3707 (6th Cir. April 7, 1981), *en banc review denied by order*, No. 79–3707 (6th Cir. May 22, 1981). However, *Willard Fuller*, although factually quite similar to our instant case and plainly the law of Kentucky at the time, does not control our decision since it preceded *Breeding v. Massachusetts Indemnity & Life Insurance Company*, Ky., 633 S.W.2d 717 decided April 20, 1982. *Breeding* clearly represents a reversal of older Kentucky insurance law cases.

### Disposition

This court is of the opinion that disposition of this appeal is controlled by Kentucky law as interpreted by the Kentucky Supreme Court in *Breeding v. Massachusetts Indemnity, supra*, and we now reverse.

We recognize that the Magistrate and the District Judge rested their decision at least in part upon the defendant's contention that although the Certificate which was furnished Reynolds did not advise him of the 25% limitation on the $150,000 "Principal Sum" value, the 25% limitation was contained in the master policy which was furnished to his employer and which he should have consulted.

At hearing Reynolds testified positively that he did not receive any document containing the 25% limitation.

Our reading of the Kentucky Supreme Court's holding in *Breeding v. Massachusetts Indemnity, supra*, makes it unnecessary for us to resolve this conflict.

Increasingly, states have adopted the grouping of contracts doctrine. Justice, fairness and the best practical result may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation. *Babcock v. Jackson*, [12 N.Y.S.2d 473] 240 N.Y.

---

1. Appellant's policy was issued under Plan B.

S.2d 743, at 749, 191 N.E.2d 279, at 283 [(1963)].

The merit of the doctrine followed in *Babcock, supra,* is that it gives to the forum having the most interest in the problem paramount control over the legal issues arising out of a particular factual context.

■ It is patently obvious that Kentucky has the greater interest in and the most significant relationship to this transaction and the parties. The insurance was purchased in Kentucky by a Kentucky resident from a Kentucky corporation. The claim was initiated by a Kentucky resident, and the claim arose from an accidental death in Kentucky.

On the other hand, Delaware has no significant relationship to the transaction and the parties. The respondent merely delivered the master insurance policy to the Delaware corporate office of Budget Rent-A-Car of America, a nationwide corporation having franchises among the fifty states. This one act of delivery, the only contact involving Delaware, does not establish a significant relationship, but merely one that is tenuous at best.

■ We hold that the Kentucky Insurance Code controls this insurance contract and find that the respondent was under an absolute duty to provide the decedent with a certificate of insurance outlining his coverage and exclusions from coverage under the policy; making the same available to the insured upon request does not satisfy the statutory requirement of delivery contained in KRS 304.18–080(2).

An insurance policy issued for delivery to any person in this state, even though in violation of this code, but otherwise binding on the insurer, shall be held valid. KRS 304.14–210(1).

■ We find that due to the respondent's failure to comply with the provisions of the Kentucky Insurance Code, the respondent is estopped from asserting the exclusion contained in Paragraph VII of the master policy. Notice of limitations to the insurance coverage provided an insured is a fundamental policy of

this commonwealth. *Twin City Fire Insurance Company v. Terry,* Ky., 472 S.W.2d 248 (1971). Therefore, the contract of insurance, without the limitation of Paragraph VII of the master policy, between the decedent, Danny E. Breeding, and the respondent, Massachusetts Indemnity and Life Insurance Company, is binding upon the respondent and the respondent is liable thereunder.

The Kentucky Supreme Court's emphasis upon the statutory requirement that the Certificate carry all of the policy limitations must prevail against the separate document defense, particularly in view of the apparently deliberate omission in the certificate of the words "25% of" before "Principal Sum" to which we have referred above.

Finally, we have considered the question of whether the policy at issue is or is not a "Group Health Policy" within the meaning of KRS 304.18–080(2). While the issue is not beyond doubt, we believe that the Kentucky Supreme Court would hold that this policy was within the purview of KRS 304.-18–080(2). In the alternative, we believe the Kentucky Supreme Court would apply to this case the same principles which is made applicable to Group Health policies as a matter of Kentucky law.

On the basis of the discussion and legal conclusions set forth above, we now vacate the judgment of the District Court and remand to that court for the entry of judgment for the "Principle Sum" of $150,000.

WELLFORD, Circuit Judge, dissenting.

I would affirm the district judge in Kentucky who carefully distinguished *Breeding v. Massachusetts Indemnity & Life Insurance Co.,* 633 S.W.2d 717, decided April 20, 1982, from the facts in this case and held that *Fuller* precisely applied. He found that claimant insured *"was supplied with a certificate of insurance,* even though he may not have thoroughly read same, which reasonably set forth a summary of his coverage and limitations of his coverage."* (Emphasis added). This finding has not been demonstrated by this

court to be clearly erroneous. The certificate does, in my view, set out reasonably the extent of coverage in a mine accident situation, and the district court awarded the maximum allowable under the coverage. (*See* Joint Appendix at 22–25.)

I find no basis, moreover, for concluding that the alleged failure to attach a document containing the 25% limitation to the master policy was done purposefully, or that there was a deliberate omission in the certificate furnished the insured.

Finally, the majority concedes that the question of whether the policy at issue is a "Group Health Policy" under Ky.Rev.Stat. Ann. § 304.18–020 (Michie 1981) involves a resolution that is not free from doubt. This question should be certified to the Kentucky Supreme Court for resolution in the event that *Breeding* were held applicable to this fact situation.

I therefore respectfully dissent.