Dr. William Gafford, his wife Susan, and their three children were killed in August 1983 when the plane he was piloting crashed shortly after takeoff near Ebro, Florida. All five family members were residents of Tuscaloosa, Alabama, and were returning home from a Florida vacation.
Two separate wrongful death/product liability actions were filed in the Circuit Court of Jefferson County, Alabama, in 1985. One was brought by William F. Gafford, Sr., as administrator of the estate of Dr. Gafford, and one was brought by Floyd O. Fitts, the father of Susan Fitts Gafford, on behalf of her and the children. Both suits were against Gulfstream Aerospace Corporation (formerly North American Rockwell) as the designer and manufacturer of the plane, and Minnesota Mining 
Manufacturing Company ("3M") as the designer and manufacturer of a flight instrument called a "Stormscope."
Gulfstream and 3M maintain that their products were not defectively designed and were not causally related to the crash. They contend that Dr. Gafford was contributorily negligent in flying into known adverse weather conditions. They assert that his negligence was the proximate cause of the accident. *Page 820 
On the eve of trial, the plaintiffs filed a motion requesting that the trial court make a pretrial determination that Alabama's substantive law (rather than Florida's) applied to this case, or, in the alternative, to certify the choice-of-law issue for an appeal to this Court pursuant to Rule 5, A.R.App.P.
The appeal on behalf of the estate of Dr. William F. Gafford, Jr. (89-1416), was dismissed upon the motion of the administrator. Apparently, he was satisfied with the trial court's choice of Florida law for Dr. Gafford's case. This leaves the wife and children's case before us on appeal. Apparently, Alabama law was preferred for their case.
Lex loci delicti has been the rule in Alabama for almost 100 years. Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred. Norris v. Taylor,460 So.2d 151, 153 (Ala. 1984); Mullins v. Alabama Great SouthernR.R., 239 Ala. 608, 195 So. 866 (1940); Dawson v. Dawson,224 Ala. 13, 138 So. 414 (1931); Alabama Great Southern R.R. v.Carroll, 97 Ala. 126, 11 So. 803 (1892). The plaintiff contends that the doctrine of lex loci delicti is outmoded and unfair.[1] He urges Alabama to adopt the approach of theRestatement (Second) of Conflict of Laws (1971).
We therefore consider the question of whether Alabama should retain the traditional conflict of laws principle of lex locidelicti in tort cases or embrace the "most significant relationship" approach of §§ 6, 145, 146, and 175 of theRestatement (Second) of Conflict of Laws, which read as follows:
"§ 6. Choice-of-Law Principles
 "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 "(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
 "(a) the needs of the interstate and international systems,
"(b) the relevant policies of the forum,
 "(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
"(d) the protection of justified expectations,
 "(e) the basic policies underlying the particular field of law,
 "(f) certainty, predictability and uniformity of result, and
 "(g) ease in the determination and application of the law to be applied."
"§ 145. The General Principle
 "(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
 "(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
"(a) the place where the injury occurred,
 "(b) the place where the conduct causing the injury occurred,
 "(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
 "(d) the place where the relationship, if any, between the parties centered.
 "These contacts are to be evaluated according to their relative importance with respect to the particular issue.
"§ 146. Personal Injuries
 "In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect *Page 821 
to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."
"§ 175. Right of Action for Death
 "In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."
Our review of the state of the law today shows us that a change in our choice of law rules is not the simple decision that the plaintiff would have us believe. Professor Herma Hill Kay of the University of California at Berkeley, has noted: "Courts willing to consider the adoption of new choice of law theory in the United States today are faced with a bewildering array of academic theories, many with loyal judicial adherents."[2] The approach of the Restatement (Second), which the plaintiffs urge us to adopt, is only one of many.
The first Restatement of Conflict of Laws in 1934 required the application of the law of the place where the key event occurred by which the plaintiff became possessed of a cause of action. Under this traditional vested rights theory, the state in which the events giving rise to a tort or contract obligation occurred, and only that state, had the power to create such an obligation and define its scope and content.[3]
Professor Harold L. Korn of Columbia University notes that the place of contracting rule "never came close to banishing various other approaches to choice of law in the contract conflicts field." Professor Korn adds: "The lex loci delicti rule, in contrast, had been universally accepted by American courts. At least in the personal injury cases that make up the great bulk of tort litigation, the lex loci rule was free of most of the intrinsic weaknesses of its kindred contract rule." Korn, The Choice-of-Law Revolution: A Critique, 83 Col.L.Rev. 722, at 804-05 (1983).
The traditional vested rights theory was first challenged in 1933 by Professor David F. Cavers in an article in the Harvard Law Review[4] in which he suggested that in determining a choice-of-law question the court should routinely take account of the substantive tenor of the competing local rules and the desirability of the results they would produce.[5] Professor Brainerd Currie of Duke University published a series of articles between 1958 and 1965 in which he proposed a governmental interest analysis approach.[6] Professor Robert Leflar *Page 822 
announced his five "choice-influencing considerations" in 1966.[7] The Restatement (Second) of Conflicts was published in 1971.
The first total break with the traditional approach to tort conflicts came with the New York Court of Appeals decision inBabcock v. Jackson, 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S.2d 743
(1963). This decision is considered the watershed decision that "at last moved the modern choice-of-law revolution out of the academic journals and into the courts."[8]
Since Babcock, the rule of lex loci has been abandoned in favor of a "modern approach" in many jurisdictions. However, those jurisdictions are not unanimous as to what this "modern approach" should be. One commentator notes at least six separate approaches in jurisdictions that have departed from the rule of lex loci.[9]
Some states have adopted the approach of the Restatement(Second) in tort cases. First Nat'l Bank v. Rostek,182 Colo. 437, 514 P.2d 314 (1973); Ingersoll v. Klein, 46 Ill.2d 42,262 N.E.2d 593 (1970); Gutierrez v. Collins, 583 S.W.2d 312 (Tex. 1979); Mitchell v. Craft, 211 So.2d 509 (Miss. 1968);Ehredt v. DeHavilland Aircraft Co., 705 P.2d 446 (Alaska 1985);Bryant v. Silverman, 146 Ariz. 41, 703 P.2d 1190 (1985);O'Connor v. O'Connor, 201 Conn. 632, 519 A.2d 13 (1986); Bishopv. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980);Johnson v. Pischke, 108 Idaho 397, 700 P.2d 19 (1985); Lee v.Ford Motor Co., 457 So.2d 193 (La.Ct.App.) cert. denied,461 So.2d 319 (La. 1984); Adams v. Buffalo Forge Co., 443 A.2d 932
(Me. 1982); Kennedy v. Dixon, 439 S.W.2d 173 (Mo. 1969); Morganv. Biro Manufacturing Co., 15 Ohio St.3d 339, 474 N.E.2d 286
(1984); Brickner v. Gooden, 525 P.2d 632 (Okla. 1974); BaffinLand Corp. v. Monticello Motor Inn, Inc., 70 Wn.2d 893,425 P.2d 623 (1967). Nebraska appears to follow the Restatement(Second), as does Oregon. Harper v. Silva, 224 Neb. 645,399 N.W.2d 826 (1987); Myers v. Cessna Aircraft Corp., 275 Or. 501,553 P.2d 355 (1976). North Dakota has a unique approach, which is patterned after the New York case of Babcock v. Jackson, supra. Although this is essentially the approach of theRestatement (Second), the North Dakota Supreme Court has avoided citation to, or reliance upon, it.[10] Issendorf v. Olson,194 N.W.2d 750 (N.D. 1972).
 "No state has a more convoluted, eclectic approach to choice of law than Pennsylvania. On various occasions, its courts have applied the First and Second Restatements, the center of gravity approach, interest analysis and Professor Cavers' 'principles of preference.' "[11]
The most recent Pennsylvania case appears to follow the rules formulated by Professor Cavers. Cipolla v. Shaposka, 439 Pa. 563, 267 A.2d 854 (1970). Massachusetts has resolved "not to tie Massachusetts conflict law to any specific choice-of-law doctrine, but seek instead a functional choice of law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." BushkinAssoc., Inc. v. Raytheon Co., 393 Mass. 622, 631,473 N.E.2d 662, 668 (1985).
New Jersey and California have adopted the governmental-interest analysis of Professor Currie in choice of law cases. Pfau v. Trent Aluminum Co., 55 N.J. 511,263 A.2d 129 (1970); Reich v. Purcell, 67 Cal.2d 551, 432 P.2d 727,63 Cal.Rptr. 31 (1967). Arkansas, New Hampshire, Hawaii, Wisconsin, Rhode Island, and Minnesota apply the choice-influencing considerations *Page 823 
of Professor Leflar. Wallis v. Mrs. Smith's Pie Co.,261 Ark. 622, 550 S.W.2d 453 (1977); Clark v. Clark, 107 N.H. 351,222 A.2d 205 (1966); Peters v. Peters, 63 Haw. 653, 634 P.2d 586
(1981); Heath v. Zellmer, 35 Wis.2d 578, 151 N.W.2d 664 (1967);Pardey v. Boulevard Billiard Club, 518 A.2d 1349 (R.I. 1986);Bigelow v. Halloran, 313 N.W.2d 10 (Minn. 1981).
Although it initially adopted the Restatement (Second), Kentucky has chosen a lex fori approach to tort conflicts cases, applying Kentucky substantive law. Arnett v. Thompson,433 S.W.2d 109 (Ky. 1968); Foster v. Leggett, 484 S.W.2d 827
(Ky. 1972). Michigan has also embraced a lex fori approach.Olmstead v. Anderson, 428 Mich. 1, 400 N.W.2d 292 (1987).
Many states join Alabama in adhering to the traditional view of the first Restatement, which looks to the lex loci delicti
in tort cases. Friday v. Smoot, 58 Del. 488, 211 A.2d 594
(1965); General Tel. Co. v. Trimm, 252 Ga. 95, 311 S.E.2d 460
(1984); Louisville N.R.R. v. Revlett, 224 Ind. 313,65 N.E.2d 731 (1946); Ling v. Jan's Liquors, 237 Kan. 629, 703 P.2d 731
(1985); Hauch v. Connor, 295 Md. 120, 453 A.2d 1207 (1983);Kemp v. Allstate Insurance Co., 183 Mont. 526, 601 P.2d 20
(1979); Karlsen v. Jack, 80 Nev. 201, 391 P.2d 319 (1964);First Nat'l Bank in Albuquerque v. Benson, 89 N.M. 481,553 P.2d 1288 (App.), cert. denied, 90 N.M. 7, 558 P.2d 619 (1976);Petrea v. Ryder Tank Lines, 264 N.C. 230, 141 S.E.2d 278
(1965); Algie v. Algie, 261 S.C. 103, 198 S.E.2d 529 (1973);Heidemann v. Rohl, 86 S.D. 250, 194 N.W.2d 164 (1972); Wintersv. Maxey, 481 S.W.2d 755 (Tenn. 1972); Rhoades v. Wright,622 P.2d 343 (Utah 1980), cert. denied, 454 U.S. 897,102 S.Ct. 397, 70 L.Ed.2d 212 (1981); Goldman v. Beaudry, 122 Vt. 299,170 A.2d 636 (1961); McMillan v. McMillan, 219 Va. 1127,253 S.E.2d 662 (1979); Hopkins v. Grubb, 160 W. Va. 71,230 S.E.2d 470 (1977); Ball v. Ball, 73 Wyo. 29, 269 P.2d 302
(1954).
After careful consideration, we are not convinced that we should abandon the lex loci delicti rule for the approach of the Restatement (Second) on the facts of the present case. Professor Kay and other commentators tell us that the adoption of the approach of the Restatement (Second) has not brought certainty or uniformity to the law:
 "Some state courts routinely list [the Restatement's] relevant sections in their opinions and try to follow them; this task is easiest when the case is controlled by one of the Restatement Second's specific narrow rules. Other state courts have not been consistent in their terminology about what approach they are following, and others have retained primary emphasis on the place of the wrong in tort cases, even while abandoning the lex loci delicti for the Restatement Second. . . . This review of the cases suggests that, if the original Restatement was unsuccessful because of its dogmatic rigidity and its insistence on the uncritical application of a few specific rules, the Restatement Second may fail to provide enough guidance to the courts to produce even a semblance of uniformity among the states following its method. In the drafters' attempt to mollify their critics, they have created an umbrella for traditionalist and modern theorist alike: a fragile shelter that may prove itself unable to survive any but the most gentle of showers."[12]
We find that we agree with the Supreme Court of Georgia. The newer approaches to choice of law problems are neither less confusing nor more certain than the traditional approach. "Until it becomes clear that a better rule exists, we will adhere to our traditional approach." General Tel. Co. v. Trimm, supra, 252 Ga. at 96, 311 S.E.2d at 462.
We also see no need for any special exception in this particular case on public policy grounds, as the plaintiff requests. The plaintiff knew the law of Alabama at the time he filed the suits, and chose to file in Alabama. The judgment of the trial court is due to be affirmed.
AFFIRMED. *Page 824 
HORNSBY, C.J., and MADDOX, ALMON, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.
[1] The defendants argue that the motivation of the plaintiff in seeking to change the law is not to enhance the state of the law in Alabama, but to attempt to increase the damages recoverable in the case. They note that under the Florida wrongful death law, the only compensatory damages allowed for the death of the wife and children would be funeral expenses, because they had no income.
[2] Kay, Theory Into Practice: Choice of Law in the Courts, 34 Mercer L.Rev. 521, 523 (1983).
[3] Korn, The Choice-of-Law Revolution: A Critique, 83 Col.L.Rev. 722, at 803 (1983).
[4] Cavers, A Critique of the Choice-of-Law Problem, 47 Harv.L.Rev. 173 (1933).
[5] Korn, supra, at 809-10.
[6] Currie, Selected Essays in the Conflict of Laws (1963). "The process [of governmental interest analysis] begins by identifying the specific law in each state touching upon the disputed legal issue. Next, the court must determine the precise policies which the respective laws were designed to augment. Finally, the court examines each jurisdiction's factual relationship with the litigation and determines whether or not the application of a particular state's law would be consistent with the purposes identified as supporting that law. Once the court has completed this three-step technique, the actual choice of law decision is routine. If application of neither law would serve the purposes behind that law, the case is an unprovided-for case and the court should apply its own law for the mere sake of convenience. If application of one law would further the purposes behind that law, but application of the other law would not serve a purpose, the choice is easy: the court should apply the former law. This is known as a false conflict. Finally, if the case is such that application of either law would serve the purposes behind that law, a true conflict is presented and the court is left with several options as to how to resolve it. It can proceed as Currie originally suggested and apply the forum's law; it can sharpen its analysis and determine whether a 'more moderate and restrained interpretation' of the forum law will show that its application is unnecessary for the fulfillment of the purpose behind the law; it can apply the law of the state whose interests would be most impaired by not having its law applied; or, it can simply use one of the other choice of law theories as a true conflict tie breaker." Smith, Choice of Law in theUnited States, 38 Hastings L.J. 1041, at 1047-48 (1987).
[7] Robert Leflar, Choice-Influencing Considerations in ConflictsLaw, 41 N.Y.U.L.Rev. 267 (1966). His five factors are: (1) predictability of result, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. See also Smith, n. 9, at 1049.
[8] Korn, supra, at 827.
[9] Gregory E. Smith, Choice of Law in the United States, 38 Hastings L.J. 1041, 1172-74 (1987).
[10] Smith, n. 9, at 1119-20.
[11] Smith, n. 9, at 1131-32.
[12] Kay, n. 2, at 561-562.