**Suzanne M. POST, Plaintiff,**

v.

**James E. ANNAND, Constance Annand, David Annand, the Berkeley Divinity School of Yale University and the Episcopal Diocese of Connecticut, Defendants.**

**No. 92 Civ. 1398 (GLG).**

United States District Court, S.D. New York.

Sept. 1, 1992.

O'Connor, McGuinness, Conte, Doyle, Oleson & Collins, White Plains, N.Y., for plaintiff; Dennis T. Doyle, Montgomery Lee Effinger, of counsel.

Wilson, Bave, Conboy & Bave, White Plains, N.Y., for defendants James E. and Constance Annand; William H. Bave, Jr., of counsel.

Harold A. Haag, White Plains, N.Y., for defendants Berkeley Divinity School of Yale University and Episcopal Diocese of Connecticut; Edwin B. Winder, of counsel.

David E. Annand, pro se.

## MEMORANDUM DECISION

GOETTEL, District Judge.

In this dog eat dog world, anything is fair game for litigation in the federal courts. While it may not be news when a dog bites a man, it is notable when a dog bites a female minister. As compensation for her injuries, plaintiff seeks to take a bite out of the defendants' pocketbooks. Before us now is her motion for summary judgment against James and Constance Annand and the Berkeley Divinity School of Yale University.

Suzanne Post was a graduate student at the Yale Divinity School where defendant James Annand was the Dean of the Berkeley Divinity School of Yale University. Annand lived in an apartment in a building owned by the Divinity School, which was known as the Berkeley Center. This building, actually an old converted mansion, served as the headquarters for the school and contained, in addition to the residence provided for Annand and his wife, a chapel, offices, a dining room, students' quarters, and rooms which were sometimes used for classes. The Annand apartment, located on the second floor of the Center, had a living room, galley-like kitchen, dining room, small bedroom and bathroom. The apartment was self-contained because its door could be locked. However, the fire exits from the second floor led through the apartment so at no time could it be deemed completely private. The Annands generally used the large kitchen of the building which was located on the first floor as well as using the other parts of the building to entertain. Suzanne Post lived on the third floor of the Center.

The Annands kept two dogs, Apollo, a black labrador retriever, and Rocky, the villain of this piece, a chocolate lab. Plain-

tiff claimed that Rocky was a stray who drifted into the Divinity School and became a mascot. Both dogs lived full-time at the Berkeley residence and the students, in exchange for cheaper rent, would assist the Dean and his wife with household chores, including feeding and watching the dogs.

The Annands had to leave on a business trip on November 29, 1990. The previous night, after chapel, they asked Ms. Post to come to their apartment to discuss caring for the dogs. Mrs. Annand was showing her how many scoops of food to put in the bowl when Rocky, apparently eager to get at the food, reared up and bit Post on the nose.[1] Post, now an Episcopal priest with her own ministry, obviously has a bone to pick as her injuries required substantial medical care, and Rocky is clearly in the doghouse. In dogged pursuit of damages for her trauma, she filed this suit, on the basis of diversity jurisdiction, in early 1992.

Hounded by Connecticut's General Statute § 22–357 which imposes strict liability for dog bites on a dog's owner, *see Woolf v. Chalker*, 31 Conn. 121, 127 (1862); *Maccarone v. Hawley*, 7 Conn.App. 19, 507 A.2d 506, 508 (1986), the defendants have foregone their obvious defense of improper venue in the hope that a federal court based in New York will somehow be persuaded that New York state's law, which does not create strict liability, should be applied instead. The defendants are barking up the wrong tree.

■■ In a diversity case, the court must look to the choice of law rules of the forum state to determine which state's substantive law to apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Mattox v. News Syndicate Co., Inc.*, 176 F.2d 897, 900 (2d Cir.), *cert. denied*, 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525 (1949). Consulting our dog-earred copy of *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), we see that under New York's choice of law rules, this court must apply the substantive tort law of the state that has the most significant relationship with the occurrence and with the parties. *Machleder v. Diaz*, 801 F.2d 46, 51 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987). The only New York contact with this litigation is the fact that the plaintiff resided here when the litigation commenced. (She now resides in Connecticut.) The dog bite occurred in Connecticut, the Divinity School and its facilities are located in Connecticut, and the Annands are residents, at least part-time, of Connecticut. In addition, the State of Connecticut has an important interest in regulating the conduct of dog-owners within its borders. Defendant's dogmatic insistence aside, these reasons dictate that Connecticut law must be applied.

■■ Unlike the ancient legal maxim, in Connecticut every dog is *not* entitled to one bite. Section 22–357 of the Connecticut General Statutes states in relevant part that "if any dog does any damage to the body of any person, the owner or keeper shall be liable for such damage except when such damage has been occasioned to the body of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog." There has been no suggestion that Post was trespassing or in any way annoying the dog, which would create an exception to the statute. *See Doerfler v. Redding*, 2 Conn.Cir. 694, 205 A.2d 502, 503 (1964). Therefore, under this statute, the owners or keepers of the dog are liable.

According to Fed.R.Civ.P. 56(c), summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Viewing the record in the light most favorable to the nonmoving party—here, the Annands and the Divinity School—we must determine whether a reasonable jury could find that the defendants were strictly liable for unleashing Rocky on the unsuspecting Suzanne Post.

---

1. There is no indication that Rocky, like the dog in Oliver Goldsmith's *Elegy on the Death of a Mad Dog*, "to gain some private ends, went mad and bit the [wo]man."

The Annands do not deny that they were keeping Rocky who apparently was not licensed to anyone but had a nose for trouble. Therefore, they are liable under § 22-357 for the injuries suffered by Post. Whether the Divinity School should be held liable gives us pause.

■■■ One who does not own a dog can nevertheless be strictly liable for a dog's bite if that person was keeping the dog at the time the injury was inflicted. *See* § 22-357; *Falby v. Zarembski*, 221 Conn. 14, 602 A.2d 1, 3 (1992). The Divinity School asks, "Are we Rocky's keeper?" "Keeper" is defined as "any person, other than the owner, harboring or having in his possession any dog." *Id.; Duhaime v. Mills*, slip opinion, No. CV 91 03 45 21S, 1992 WL 154896 (Conn.Super. June 30, 1992). "To harbor a dog is to afford lodging, shelter or refuge to it … 'Possession cannot be fairly construed as anything short of the exercise of dominion and control over the dog …'" *Falby v. Zarembski*, 602 A.2d at 3 (citations omitted); *Duhaime, supra. See Buturla v. St. Onge*, 9 Conn.App. 495, 519 A.2d 1235, 1235-36 (1987) (keeper of dog is one who exercises some control over the dog).

Plaintiff suggests that the Divinity School falls within the framework of the statute. She notes out that Rocky had free access to the common parts of the Center, including the business offices, and argues that the School therefore harbored Rocky. In some dog bite cases involving landlords and tenants, access to common areas is an important factor in determining the liability of a landlord for a bite rendered by a dog owned by the tenant. For example, in *Bailey v. Desanti*, 36 Conn.Supp. 156, 414 A.2d 1187 (1980), the court found that landlords who allowed the dog to stay in a yard which was available to the tenants only in common with the other residents of the house had harbored the dog and were therefore keepers. In contrast, the court in *Buturla v. St. Onge*, 9 Conn.App. 495, 519 A.2d 1235, found that the landlord was not a keeper where the dog entered a common hallway only to go to and from the apartment in which he was kept.

Rocky had almost unlimited access to the common areas of the Center and James Annand, as the Dean of the Divinity School, authorized the construction of a dog pen in the Center's yard. Plaintiff contends that these facts indicate that the Divinity School was keeping the dog. Her theory is that Rocky's unfettered access to all parts of the Center suggests that Rocky was not just the Annands' best friend but was nothing less than "the Divinity Dog." [2]

■ Plaintiff's analysis is essentially the tail wagging the dog. Rocky's having access to common areas, without more evidence indicating an intent to give refuge to the dog or to control the dog's activities on the part of the School, is not a sufficient basis to collar the Divinity School. The School's acquiescence in Rocky's presence at the Center, similarly, does not mean he was kept by that institution. *See Falby v. Zarembski*, 602 A.2d at 3; *Buturla*, 9 Conn.App. 495, 519 A.2d 1235. To show that a defendant harbored a dog for the purpose of § 22-357 requires that it be shown that the person treated the dog as living in his home and undertook to control the dog's actions. *Buturla*, 519 A.2d at 1236; *Salvatore v. Mattessich*, slip op., No. 099894, 1992 WL 49984 (Conn.Super. February 28, 1992); *Vasquez v. Hooks*, slip op., No. CV91-039001 S., 1992 WL 32549 (Conn.Super. February 10, 1992).

The importance of knowing the answer to the question of control is underscored by the recent Connecticut case of *Falby v. Zarembski*, 221 Conn. 14, 602 A.2d 1. There, an employee of a home modernization contractor brought his pit bull terrier to a job site. The president of that corporation knew that the employee brought the dog to the site and acquiesced in the dog's presence although he could have barred the dog from the work premises. At the work site, the president and other employees would pet the dog. After a suit was filed by a postal carrier who had been bitten by the dog when delivering mail to the home

---

**2.** Clearly at a divinity school they have "dogma." But see Matthew 7:6: "Give not that which is holy unto the dogs."

being remodelled, the court held that the contracting firm was not a keeper of the dog. The basis for that decision was that there was no evidence that the contractor fed, watered, housed, or otherwise cared for the dog, nor that it exercised any control over the actions of the dog. The court found that the contractor's control of the work site, by itself, did not convert it into a keeper of the dog and that strict liability could be imposed only when it has been shown that the defendant harbored or controlled the dog. In addition, the court did not agree that the contractor's allowing the dog to be kept on the site during work hours signified an intent to harbor the animal.

Plaintiff had originally contended that Rocky was a stray who had been taken in by the Divinity School. Discovery, however, clearly established, and the plaintiff now concedes, that Rocky belonged to the Annands' son, David, and lived at the Annands home in Rhode Island. When it came time for the Annands to return to the Divinity School for the new semester, their son, David, was traveling in distant places. They were compelled, therefore, to keep Rocky at the Divinity School along with their own dog, Apollo.[3] The fact that a dog legally kept at an institution may receive substantial attention and even care from non-owners would not seem to make the institution either the owner or harborer of the dog under Connecticut law. Consequently, we conclude that the Divinity School, unlike the Annands, has no liability for this dog bite.[4]

Plaintiff's motion for summary judgment is granted with respect to James and Constance Annand and denied with respect to the Berkeley Divinity School. The question of damages will be set for trial.

SO ORDERED.

---

**3.** This reminds us of the old joke about "When does life begin? Answer: When the children leave home and the dog dies." In all too many cases when the children leave home they leave their pets with their parents.

**4.** The Episcopal Diocese of Connecticut has earlier been dropped as a defendant.