OPINION OF THE COURT
John A. Milano, J.
This is an action arising out of a motor vehicle accident which *677 occurred on Interstate Highway 95, in the State of Connecticut. The plaintiff, Dae-Sik Moon, was driving a passenger automobile while the defendant, Gerald S. Kursman, was driving a truck-tractor, owned by defendant Plymouth Rock Corporation, which was hauling a semi-trailer. It is alleged that slush was splashed from the drive wheels of defendants’ truck-tractor onto the windshield of plaintiff’s vehicle, causing plaintiff to lose control of his vehicle resulting in serious physical injuries.
Notwithstanding the situs of the accident in Connecticut, plaintiff, a New York resident, has commenced this action in the New York State Supreme Court. This court has now been called upon to determine whether the law of Connecticut or of New York is to be applied in this action.
A.S in virtually every trial, disputes arise between the parties in the areas of substantive law as well as procedural law. In this particular action, this court’s job is made more difficult by the choice-of-law issues. This court must first determine what is the standard of care required of the two drivers, and then, if such standard was breached, what are the respective responsibilities the drivers owe to each other as a result of such breach.
In briefs submitted and arguments made to this court, both counsel have relied heavily on the Court of Appeals decisions of Babcock v Jackson (12 NY2d 473 [1963]) and Neumeier v Kuehner (31 NY2d 121 [1972]). Those cases are indeed most instructive. The Babcock decision (supra, at 484) states, “there is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction. Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented.”
In conducting its own research, this court came upon the Court of Appeals decision of Padula v Lilarn Props. Corp. (84 NY2d 519 [1994]). This case was not mentioned by either party, yet this court believes this case to be more timely and more relevant than anything cited by either party. Padula concerns a personal injury action commenced by a New York construction worker against the New York owner of real property located in Massachusetts. The worker was injured on the job in Massachusetts when he fell off a scaffold. He sued in the New *678 York courts under the provisions of sections 200, 240 and 241 of the New York Labor Law. The trial court found the New York Labor Law not applicable in Massachusetts. The Appellate Division and Court of Appeals affirmed the trial court. The Court of Appeals decision clearly and concisely set forth the law in New York concerning choice-of-law principles.
The Court of Appeals stated (supra, at 521), “In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation. The greater interest is determined by an evaluation of the ‘ “facts or contacts which * * * relate to the purpose of the particular law in conflict” ’ (Schultz v Boy Scouts, 65 NY2d 189, 197). Two separate inquiries are thereby required to determine the greater interest: (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss”.
The first inquiry to be considered concerns significant contacts and the jurisdiction in which they are located. In the case before this court, plaintiff is a New York resident. The defendant, Plymouth Rock Corp., owner of the truck-tractor, was incorporated in New York State, is authorized to conduct business in New York and maintains a New York office. The driver, defendant Kursman, is a Rhode Island resident but was acting within the scope of his employment for the defendant owner when the accident occurred. This court thus believes the contacts with New York to be significant.
Returning to the Padula decision (supra), the Court of Appeals next stated (at 521-522):
“As to the second inquiry, a distinction must be made between a choice-of-law analysis involving standards of conduct and one involving the allocation of losses (Schultz v Boy Scouts, 65 NY2d 189, 198, supra). In the former case the law of the place of the tort governs. As we stated in Schultz:
“ ‘Thus, when the conflicting rules involve the appropriate standards of conduct, rules of the road, for example, the law of the place of the tort “will usually have a predominant, if not exclusive, concern” * * * because the locus jurisdiction’s interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests of the common-domicile jurisdiction.’ [Citations omitted.]
*679 “Conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring. Tf conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders’ [citation omitted].
“Loss allocating rules, on the other hand, are those which prohibit, assign, or limit liability after the tort occurs, such as charitable immunity statutes * * * guest statutes * * * wrongful death statutes * * * vicarious liability statutes * * * and contribution rules * * * Where the conflicting rules at issue are loss allocating and the parties to the lawsuit share a common domicile, the loss allocation rule of the common domicile will apply [citations omitted].”
The issue to be decided by this court thus becomes whether the particular statutes in issue are primarily conduct-regulating or loss-allocating. The first statute to be considered is Connecticut General Statutes § 14-104, which regulates “Fenders and other wheel protectors”. That statute requires that motor vehicles have devices which will minimize the spray of dirt, water or other materials which might present a hazard to other drivers. This court will analyze that statute as it pertains to the vehicle of the defendants later in this decision. However, for the purposes of this present choice-of-law analysis, this court finds that statute to be conduct-regulating. Connecticut has every right to promulgate rules of the road to ensure safety on its highways. It is not for New York to interfere with that right to regulate Connecticut highways. Accordingly, this court finds section 14-104 to be an applicable statute as to defendants’ duty of care to other drivers.
The other statutes at issue are CPLR 1411 and Connecticut General Statutes § 52-572h. The New York statute governing culpable conduct can be characterized as pure comparative negligence. The Connecticut statute however is a hybrid providing for an allocation of culpable conduct only in the event that the plaintiffs culpable conduct is not greater than that of the other parties against whom recovery is sought, including settled or released parties.
The application of one or the other statute will have a significant effect upon the parties in this action. However, the choice is clear in this action as there is no question that both statutes can be classified as loss-allocating. The New York Court of Appeals has consistently held in cases such as Babcock, Schultz and Padula (supra) that New York has a greater interest in *680 regulating the allocation of losses that result from tortious conduct. Determinations as to the right to recovery or the extent of a remedy are best applied from the domicile forum because it has a greater interest in regulating parties who accept the burdens of submitting themselves to its authority. Defendant Plymouth Rock Corporation, incorporated in New York State and as a corporation qualified to conduct business in New York and one maintaining facilities in New York, cannot claim that it has not submitted itself to the jurisdiction of the New York courts.
Accordingly, the New York comparative negligence standard contained in CPLR article 14-A will govern the loss-allocation in this action.
Having now determined which rules of law apply to the facts of this case, this court now turns to an interpretation of Connecticut General Statutes § 14-104. It is interesting to note that this court has researched Connecticut General Statutes, volume 8, title 14, including the 1998 Pocket Part, and in regard to the specific statute, Connecticut General Statutes § 14-104 (b), finds no case law and/or citations interpreting said statute. This court is therefore obliged to interpret same. Subject to certain exceptions, not applicable here, Connecticut General Statutes § 14-104 (b) provides that: “No person shall operate or cause to be operated any bus, truck, truck-tractor, full trailer or semitrailer of registered gross weight exceeding three tons on any public highway unless the same is equipped with suitable metal protectors or substantial flexible flaps behind the rearmost wheels, and, in case the rear wheels are not covered at the top and rear by fender, body or other parts of the vehicle, the rear wheels shall be covered at the top and rear by protective means of such standard type of design and so installed as to reduce, as far as practicable, such wheels from throwing dirt, water or other materials on the windshields of following vehicles”.
The liability issue herein is whether truck-tractors must be equipped with mud flaps even when they are attached to trailers or semi-trailers, because the plaintiff alleges that because the truck-tractor’s rear wheels were not so equipped that slush and snow was thrown from said wheels onto the windshield of the plaintiffs vehicle, thereby causing the accident.
According to section 14-104 (b), the statute clearly lists each vehicle it seeks to regulate. It is important to note that each vehicle type is separated by the use of an “or”, inferring that each of the vehicles is to be regulated and equipped with protectors or flaps as individual entities.
*681 The Connecticut legislation further reveals its intention to require truck-tractors to have their own flaps, separate and aside from the trailers or semi-trailers, by its exclusion of certain definitional language in section 14-104. According to section 14-1 (a) (82), “Definitions”: “ ‘Tractor-trailer unit’ means a combination of a tractor and a trailer or a combination of a tractor and a semitrailer”.
The tractor-trailer unit was excluded from section 14-104 (b) as a vehicle type to be regulated. Rather, section 14-104 requires tractors and trailers each to be regulated. This exclusion is crucial because, if included, the statute would require only the rearmost wheels of the “tractor-trailer unit” (the attached trailer or semi-trailer) to be equipped with mud flaps. Such exclusion of this term, in conjunction moreover with the use of the “or” alternative, indicates that a truck-tractor and its attached trailer each require mud flaps to be attached to their rearmost wheels. Therefore, if the Connecticut Legislature intended mud flaps only be attached to the “rearmost” wheels of a trailer or semi-trailer when connected to a truck-trailer, it would have not used the conjunctive “or” in identifying each vehicle entity and would have included the entire “truck-trailer unit”.
Accordingly, this court holds that Connecticut General Statutes § 14-104 (b) requires and mandates that truck-tractors must be equipped with mud flaps even if they are attached to trailers or semi-trailers.